**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-2931

_____

UNITED STATES OF AMERICA

v.

JERMEL LEWIS,
a/k/a STAR,
a/k/a PR-STAR,
a/k/a P

Jermel Lewis,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E. D. Pa. 2-08-cr-00161-003)
District Judge: Honorable J. Curtis Joyner

_____

Argued May 27, 2014

Before:  RENDELL, FISHER and CHAGARES,

*Circuit Judges*.

(Opinion Filed:  September 9, 2014)

Paul J. Hetznecker, Esq.  **ARGUED**
Suite 911
1420 Walnut Street
Philadelphia, PA 19102

Arlene D. Fisk, Esq.

Robert A. Zauzmer, Esq.  **ARGUED**
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

_____

OPINION OF THE COURT

_____

FISHER, *Circuit Judge*.

This case requires us to determine the applicable standard of review for situations where a district court has imposed a mandatory minimum sentence based upon facts that were never charged in the indictment or found by a jury beyond a reasonable doubt. Such errors occur when a sentence is imposed in violation of the rule recently set forth in *Alleyne v. United States*, 133 S. Ct. 2151 (2013). Appellant Jermel Lewis challenges his sentence and contends that the failure of the indictment to charge an *Alleyne* element, combined with *Alleyne* error in jury instructions and at sentencing, is structural error. We hold that *Alleyne* error of the sort alleged here is not structural and is instead subject to harmless or plain error analysis under Federal Rule of Criminal Procedure 52. We conclude that the District Court's error in Lewis's case was harmless and will therefore affirm.

I.

Although this case has a lengthy history, the facts are largely undisputed. Lewis and his co-defendants Glorious Shavers and Andrew White (collectively, "defendants") committed an armed robbery of an unlicensed after-hours "speakeasy" in North Philadelphia on November 8, 2005. The defendants committed the robbery by pointing firearms at the customers and employees, ordering them to the floor, and threatening to shoot them. Shavers and White were arrested shortly after the robbery, and Lewis was apprehended at a later time.

Shavers and White were charged on March 20, 2008 with Hobbs Act robbery in violation of 18 U.S.C. § 1951(a), and with using and carrying a firearm during and in relation

to a crime of violence, in violation of 18 U.S.C. § 924(c). On July 10, 2008, a superseding indictment charged Lewis with the same offenses and added attempted witness tampering charges against all three defendants. On August 20, 2009, a second superseding indictment added additional witness tampering charges and a count of conspiracy to commit Hobbs Act robbery against all three defendants. Count three of the Second Superseding Indictment—the only count at issue here—provided that the defendants "knowingly used and carried, and aided and abetted the use and carrying of, a firearm, that is: (1) a shotgun; (2) a Smith & Wesson, .38 caliber, Special, six-shot revolver, serial number D479345, and four live rounds of ammunition; and (3) a handgun, during and in relation to a crime of violence." App. at 71.

The defendants were tried in the Eastern District of Pennsylvania beginning on September 9, 2009. The government presented testimony from Brian Anderson, who was a patron at the speakeasy the night of the robbery. He identified Lewis as "a heavier light-skinned guy, [who] had another type of handgun—I think it was black—in his hand." App. at 876. That person "stood in the doorway with the gun on everybody." *Id.* Anderson positively identified Lewis at trial.

The government also presented testimony from Alberto Vazquez, another patron at the speakeasy at the time of the robbery. Vazquez identified Lewis at trial as "the general, the leader," who "had a black 9-millimeter or .45 caliber. . . . It was a black automatic weapon. He pulled it out of his right side pocket, of the hood pocket." App. at 968-69. Vazquez further testified that Lewis's gun was "pointed at [Vazquez] and pointed at several other people." App. at 970. At one point Lewis "pulled [Vazquez's] shirt up, [and] put the

4

gun to [his] stomach." App. at 971. Vazquez identified Lewis as the defendant who robbed him that night.

The District Court instructed the jury that Lewis was charged with "using and carrying a firearm during the crime of violence." App. at 2019-21. The jury found all three defendants guilty of the Hobbs Act violations and the § 924(c) violation, but Lewis was acquitted of all witness tampering charges. Lewis was ultimately sentenced to a term of incarceration of 141 months to be followed by five years of supervised release. The term consisted of 57 months' incarceration on each of two Hobbs Act counts, to run concurrently with one another, and 84 months' incarceration, the mandatory minimum term of imprisonment, on the § 924 count for brandishing a firearm as set forth in 18 U.S.C. § 924(c)(1)(A)(ii),[1] to run consecutively.

Following sentencing, defendants appealed to this Court. We vacated Shavers's and White's witness tampering convictions and Shavers's eight-year term of supervised release, but affirmed the remaining convictions and Lewis's sentence. *United States v. Shavers*, 693 F.3d 363 (3d Cir. 2012). The Supreme Court granted defendants' petition for a writ of certiorari, vacated our judgment, and remanded for further consideration in light of its decision in *Alleyne*. *Shavers v. United States*, 133 S. Ct. 2877 (2013).

The government now concedes that the District Court erred in imposing an enhancement on Shavers and White for obstruction of justice pursuant to U.S.S.G. § 3C1.1, and those

---

[1] Section 924(c)(1)(A) imposes differing mandatory minimum sentences depending upon whether the defendant "uses or carries," "brandish[es]," or "discharge[s]" a firearm during a crime of violence or drug trafficking crime.

cases have been remanded to the District Court for resentencing. The government continues to oppose Lewis's *Alleyne* argument, however, which is the only issue remaining in this appeal.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291. Allegations of constitutional error at sentencing are subject to plenary review. *United States v. Barbosa*, 271 F.3d 438, 452 (3d Cir. 2001). "When the defendant has made a timely objection to an error and [Federal Rule of Criminal Procedure] 52(a) applies, a court of appeals normally engages in a specific analysis of the district court record . . . to determine whether the error was prejudicial." *United States v. Olano*, 507 U.S. 725, 734 (1993).

## III.

Our discussion proceeds in three parts. First, we examine the law of structural error as it has been developed and applied to errors under *Alleyne* and its predecessor, *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Second, we address Lewis's particular arguments for finding structural error in this case. Third, because we conclude that no structural error occurred, we discuss why the *Alleyne* error in this case was harmless.

## A.    Structural    error    jurisprudence    and *Apprendi*/*Alleyne*

Two bodies of law govern our structural error analysis. The first includes *Apprendi* and *Alleyne* and sets forth the rule that applies to Lewis's situation—that facts increasing a mandatory minimum sentence must be charged in an indictment, presented to a jury, and found beyond a

6

reasonable doubt. The second arises from the Supreme Court's decision in *Neder v. United States*, 527 U.S. 1 (1999), and considers the extent to which some constitutional errors are "structural" such that they affect the fundamental fairness of criminal proceedings and require automatic reversal.

*1.* Apprendi *and* Alleyne

*Apprendi* arose in the context of New Jersey's hate crime law, N.J. Stat. Ann. § 2C:44-3(e). That law permitted judges to increase a defendant's maximum sentence based upon a factual finding by a preponderance of the evidence that a crime was committed for the purpose of intimidating the victim based upon race. *Apprendi*, 530 U.S. at 468-69. Apprendi was sentenced to twelve years' imprisonment after the trial judge increased his statutory maximum term from ten to twenty years pursuant to the hate crime statute. *Id.* at 470-71. The Supreme Court determined that such an increase was unconstitutional and held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. In arriving at its conclusion, the Court rejected the distinction between an element of a crime and a sentencing factor that increased the potential maximum sentence. *Id.* at 478-81. According to the Court, both types of facts are subject to the same constitutional protections. *Id.* at 490.

Thirteen years later, the Supreme Court addressed the corollary issue to that presented in *Apprendi*; that is, the appropriate standard of proof for facts that increase the statutory mandatory *minimum* penalty. The defendant in *Alleyne* was charged with, among other crimes, using or carrying a firearm in relation to a crime of violence, in violation of § 924(c)(1)(A). 133 S. Ct. at 2155. At trial, the

7

jury convicted Alleyne of using or carrying a firearm, but made no finding regarding whether the firearm was brandished. *Id.* at 2156. The District Court nevertheless found that Alleyne brandished the firearm by a preponderance of the evidence—as was the practice at that time—thus triggering the seven-year mandatory minimum sentence in § 924(c)(1)(A)(ii). *Id.*

The *Alleyne* Court extended the logic from *Apprendi* to include those facts that increase the statutory minimum. *Alleyne*, 133 S. Ct. at 2160 ("While *Harris* [*v. United States*, 536 U.S. 545 (2002)] limited *Apprendi* to facts increasing the statutory maximum, the principle applied in *Apprendi* applies with equal force to facts increasing the mandatory minimum."). Just as the facts at issue in *Apprendi* created a new penalty by increasing the statutory ceiling, so too did the facts in *Alleyne* that increased the floor. *Id.* The Court thus held "that facts that increase mandatory minimum sentences must be submitted to the jury" and found beyond a reasonable doubt. *Id.* at 2163. Both *Apprendi* and *Alleyne* are watershed decisions that continue to have a substantial impact on sentencing law, as will be discussed below.

### 2. *Structural error jurisprudence*

The Supreme Court has recognized that "'most constitutional errors can be harmless.'" *Neder*, 527 U.S. at 8 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991)). In general, if a defendant "'had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis.'" *Id.* (quoting *Rose v. Clark*, 478 U.S. 570, 579 (1986)) (alteration in original). The types of errors identified by the Supreme Court as "'structural' and thus subject to automatic reversal [are] 'very

8

limited.'" *Id.* (quoting *Johnson v. United States*, 520 U.S. 461, 468 (1997) (listing structural errors as: the complete denial of counsel; a biased trial judge; racial discrimination in the selection of a grand jury; denial of self-representation at trial; denial of a public trial; and a defective reasonable doubt instruction)).

In *Neder*, the Supreme Court held that a jury instruction that omits an element of an offense is subject to only harmless error review.[2] 527 U.S. at 15. In that case, the defendant was charged with several counts of fraud, but the district court failed to instruct the jury on the element of "materiality." *Id.* at 4. In reviewing the error, the Supreme Court acknowledged that "[u]nlike such defects as the complete deprivation of counsel or trial before a biased judge, an instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Id.* at 9. As such, the Court looked to other cases involving omission or "misdescription" of an element, and to situations where Sixth Amendment violations occurred because the jury, for various reasons, failed to return a "complete verdict" on each element of an offense. *Id.* at 10-13 (citing *California v. Roy*, 519 U.S. 2 (1996) (*per curiam*) (omission from jury instruction); *Carella v. California*, 491 U.S. 263 (1989) (*per curiam*) (jury applied an unconstitutional mandatory conclusive presumption); *Pope v. Illinois*, 481 U.S. 497 (1987) (jury rendered a finding on the wrong element)). Despite these errors, the Court in each prior instance

---

[2] Federal Rule of Criminal Procedure 52(a) defines harmless error review and provides that "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."

reviewed for harmlessness, thus supporting the conclusion in *Neder* that Sixth Amendment errors arising from a jury verdict are not structural defects.

This Court first addressed the implications of structural error in the context of *Apprendi* in *United States v. Vazquez*, 271 F.3d 93 (3d Cir. 2001) (*en banc*). The defendant in *Vazquez* was charged with conspiring to possess and distribute "more than 5 kilos of cocaine" in violation of 21 U.S.C. §§ 846 and 841. *Id.* at 96. Neither the government nor the defendant requested an instruction requiring the jury to find a particular quantity of cocaine, but the judge at sentencing found by a preponderance of the evidence that nearly two kilograms of cocaine were attributable to the defendant, and he was sentenced to twenty-four years' imprisonment. *Id.* at 96-99.

On appeal we concluded that the defendant's sentence violated *Apprendi* because it was imposed based upon a drug quantity finding that increased his guidelines sentence above the twenty-year statutory maximum. *Id.* at 99. Applying plain error review,[3] we accepted that the district court erred and that the error was plain, but engaged in a lengthy discussion about whether the error affected the defendant's

---

[3] When a party fails to preserve an issue for appeal we review for plain error, which requires a showing of "'(1) error, (2) that is plain, and (3) that affect[s] substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Vazquez*, 271 F.3d at 99 (quoting *Johnson*, 520 U.S. at 466-67).

10

substantial rights.[4]  *Id.* at 99-100.  We addressed that issue in three parts.

We first characterized *Apprendi* error as a combination of both trial and sentencing error rooted in the Due Process Clause and Sixth Amendment's notice and jury trial guarantees.  *Id.* at 101.  In so concluding, we noted that *Apprendi* error involves the interplay between errors both at sentencing—"imposing a sentence beyond the prescribed statutory maximum"—and at trial—"failing to submit an element of the offense to the jury."  *Id.*  "On the one hand, the trial error exists only because of the sentencing error.  On the other hand, the sentencing error cannot occur without the trial error.  Thus, an appropriate remedy must recognize that each *Apprendi* violation is both a trial and a sentencing error."  *Id.* This conclusion allowed us to review the entire trial record when considering whether "we [could] say beyond a reasonable doubt that the *sentence* would have been the same absent the *trial error*."  *Id.* We also noted that the combined trial and sentencing error paradigm comported with Supreme Court precedent in *Neder* and *Johnson* (which both addressed trial errors) insofar as "in those cases the trial error resulted in a constitutional defect, necessitating an inquiry as to whether the defendant's substantial rights were affected."  *Id.* at 102.

We next addressed structural error.  Relying heavily upon the structural error jurisprudence enunciated in *Neder*, we concluded that *Apprendi* error, as a sentencing and trial

---

[4] Importantly, we acknowledged that the substantial rights prong of the plain error analysis is "essentially identical" to harmless error analysis, "with the exception of the burden of proof."  *Vazquez*, 271 F.3d at 100.  The Government has the burden of proof under harmless error, while the defendant has the burden under plain error.  *Id.*

error, is not structural. *Id.* at 103. In support, we identified decisions recognizing that both trial error and sentencing error can be harmless. *Id.* (citing *Neder*, 527 U.S. at 9 (trial error harmless); *Jones v. United States*, 527 U.S. 373, 402-05 (1999) (sentencing error harmless)). Because the errors had been found harmless individually, we determined that they remained harmless even in conjunction with each other. *Vazquez*, 271 F.3d at 103.

Finally, based upon our review of the trial record, we concluded beyond a reasonable doubt that the defendant's sentence would have been the same had the jury been properly instructed with respect to drug quantity. *Id.* at 104. The *Apprendi* error did not affect the defendant's substantial rights and was, therefore, harmless. *Id.*

Several Supreme Court decisions since *Vazquez* have continued to explore the interplay between *Apprendi* and structural error. The Supreme Court addressed *Apprendi* in the context of indictment and trial error in *United States v. Cotton*, 535 U.S. 625 (2002). The indictment in that case failed to allege a specific drug quantity that could have led to enhanced penalties under 21 U.S.C. § 841(b), and the jury was likewise not instructed to make a specific finding with respect to drug quantity. *Id.* at 628. Cotton was nevertheless sentenced in violation of *Apprendi* above the statutory maximum based upon the trial judge's factual findings. *Id.* No party objected to these errors. *Id.* at 627.

In assessing Cotton's case, the Supreme Court rejected the notion that the failure to allege drug quantity in the indictment was a "jurisdictional defect" that required automatic reversal. *Id.* at 629-31. Reviewing for plain error, the Court avoided the question of whether *Apprendi* error is structural and held instead that Cotton's claim failed under

12

the fourth prong of plain error review. *Id.* at 632-33. The Court noted that the drug quantity evidence was "'overwhelming' and 'essentially uncontroverted,'" and thus did not affect the fairness, integrity or public reputation of judicial proceedings. *Id.* at 633 (quoting *Johnson*, 520 U.S. at 470). In concluding, the Court recognized that:

> Respondents emphasize that the Fifth Amendment grand jury right serves a vital function in providing for a body of citizens that acts as a check on prosecutorial power. No doubt that is true. . . . But that is surely no less true of the Sixth Amendment right to a petit jury, which, unlike the grand jury, must find guilt beyond a reasonable doubt. The important role of the petit jury did not, however, prevent us in *Johnson* from applying the longstanding rule "that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right."

*Id.* at 634 (quoting *Yakus v. United States*, 321 U.S. 414, 444 (1944)).[5]

The most recent Supreme Court decision in this area is *Washington v. Recuenco*, 548 U.S. 212 (2006), which held that error premised on *Blakely v. Washington*, 542 U.S. 296 (2004)[6] is not structural and is subject only to harmless error review. *Recuenco*, 548 U.S. at 222. *Recuenco* is as close as the Supreme Court has come to deciding the issue in this case. The indictment in *Recuenco* charged the defendant with assault with a deadly weapon and the jury found him guilty of the same. *Id.* at 215. Despite the jury's finding that the defendant committed the assault with a "deadly weapon" (which was subject to a one-year sentencing enhancement) the trial court applied a three-year sentencing enhancement for assault with a "firearm."[7] *Id.* The Supreme Court found the error to be harmless and reaffirmed its holding in *Apprendi* that sentencing factors and elements are both afforded similar constitutional protections. *Id.* at 220.

---

[5] The Supreme Court also explicitly passed on deciding the question at issue in this case, i.e., "whether the omission of an element of a criminal offense from a federal indictment can constitute harmless error," in *United States v. Resendiz-Ponce*. 549 U.S. 102, 104 (2007) (resolving the issue on other grounds).

[6] *Blakely* involved the application of *Apprendi* to a state criminal conviction. 542 U.S. at 301.

[7] The indictment did acknowledge that the defendant possessed a handgun by charging "intentiona[l] assault . . . with a deadly weapon, to-wit: a handgun." *Recuenco*, 548 U.S. at 215. The charge, however, was assault with a deadly weapon, not assault with a firearm. *Id.*

The Supreme Court also rejected the argument that the sentencing court's finding amounted to "a directed verdict of guilt on an offense (assault in the second degree while armed with a firearm) greater than the one for which the jury convicted him (assault in the second degree while armed with any deadly weapon)." *Id.* at 221. In doing so, the Court analogized to *Neder* and noted that "[b]ecause Neder's jury did not find him guilty of each of the elements of the offenses with which he was charged, its verdict is no more fairly described as a complete finding of guilt of the crimes for which the defendant was sentenced than is the verdict here." *Id.* (noting that the differences between Recuenco's case and *Neder* should not be given "constitutional significance"). The Court concluded by holding that "[f]ailure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error." *Id.* at 222.

With these legal principles in mind, we now consider whether *Alleyne* error of the sort alleged by Lewis is structural or if it is subject only to review for harmlessness.

## B.     *Alleyne* **error is not structural error**

In concluding that the *Alleyne* error in this case is not structural, we must address Lewis's argument that his case is unique because the indictment failed to allege the brandishing element. As a result, he maintains that he was charged and convicted of a different crime (use and carrying a firearm) than that for which he was sentenced (brandishing a firearm). This issue represents a subtle difference from the facts in *Vazquez*, which involved an indictment that charged the

15

proper drug quantity.[8]  Despite this difference, we find that the rationale in *Vazquez*, along with subsequent Supreme Court precedent, clearly establishes that the *Alleyne* error in this case is not structural.

> 1.      Alleyne *error and structural error*

We note at the outset that Lewis faces an uphill battle with respect to structural error.  The Supreme Court has acknowledged a strong presumption that constitutional errors are harmless, and that structural error exists only in a "limited class of cases."  *Neder*, 527 U.S. at 8 (internal quotation marks omitted).  Bearing these general principles in mind, we now turn to our decision in *Vazquez*, which held that the analogous *Apprendi* error is not structural.

The primary difference between the facts of this case and those in *Vazquez* is the addition of error at the indictment

---

[8] We recognize that *Vazquez* addressed *Apprendi* error, but find its reasoning equally applicable to cases implicating *Alleyne*.  *See United States v. Lara-Ruiz*, 721 F.3d 554, 557 (8th Cir. 2013) (applying same standards under both *Apprendi* and *Alleyne* error).

stage.[9]  In *Vazquez*, the indictment charged a drug quantity that implicated a heightened statutory maximum penalty, whereas the indictment in Lewis's case failed to charge the "brandishing" element in § 924(c)(1)(A)(ii).  The addition of the indictment error in this case implicates the Fifth Amendment right to indictment by a grand jury.  We relied in *Vazquez* on the fact that *Apprendi* error was "grounded in the Due Process Clause and the Sixth Amendment's notice and jury trial guarantees."  *Vazquez*, 271 F.3d at 101.  *Alleyne* recognized the same.  133 S. Ct. at 2156 ("The Sixth Amendment provides that those 'accused' of a 'crime' have the right to a trial 'by an impartial jury.'  This right, in conjunction with the Due Process Clause . . . .").  Although neither specifically acknowledged it, we see no principled reason why the Fifth and Sixth Amendment rights recognized

---

[9] Lewis characterizes the error in this case as having occurred at the indictment, trial, and sentencing phases of proceedings. In one sense this is incorrect because the indictment, jury charge, and verdict were all consistent with respect to the "use and carrying" element of § 924.  Viewed that way, the error that occurred in this case was limited to sentencing, where the District Court imposed the sentence for brandishing.  Error that occurs only at sentencing is not structural.  *See, e.g.*, *Jones*, 527 U.S. at 402-05.  As discussed above, however, this "sentencing-error-only" interpretation is inconsistent with our holding in *Vazquez* that *Apprendi* error (along with the corollary *Alleyne* error) is both trial and sentencing error.  271 F.3d at 101-02.  Because Lewis does not seriously challenge the application of the harmless error test (and thus concedes that he loses under harmless error review regardless of when that error occurred), we need not resolve the issue today.

17

as potentially harmless in both *Vazquez* and *Alleyne* cannot also be read to include the Fifth Amendment right to a grand jury indictment.

Supreme Court precedent in this area strongly supports our conclusion. *Neder*, like *Vazquez*, found that a defective jury instruction on an essential element of the offense was subject only to harmless error review. 527 U.S. at 15. The underlying constitutional error identified in *Neder* was, of course, the deprivation of the Sixth Amendment right to a jury trial on that element. *Id.* at 12. Although *Neder* was limited to the Sixth Amendment right and did not consider the grand jury right under the Fifth Amendment, the Supreme Court nevertheless acknowledged that "most constitutional errors can be harmless." *Id.* at 8 (internal quotation marks omitted). The *Neder* Court, in listing the errors it has deemed to be structural, likewise made no mention of the Fifth Amendment right to a grand jury indictment. *Id.*

*Recuenco*, on the other hand, extended the reasoning in *Neder* and found no structural error in a situation where the indictment did not charge a required element. 548 U.S. at 222. In fact, *Recuenco* provides the missing link between this case and our analysis in *Vazquez* because it recognized that errors in an indictment can be harmless.[10]  Because *Vazquez*

---

[10] We acknowledge that the indictment in *Recuenco* did mention that a firearm was present, even though the actual charge was only for assault with a deadly weapon. We find this point to be irrelevant, however, because the indictment in this case also contained allegations of brandishing, albeit not in so many words. *See* discussion at Section III.C., *infra*. To the extent that the indictments in this case and in *Recuenco* contained sufficient allegations in substance if not in form, the two cases are indistinguishable.

18

based its holding upon Supreme Court precedent finding that sentencing and trial error are subject to review for harmlessness, *Recuenco* now allows us to extend that rationale and conclude that omission of a sentencing factor from an indictment is likewise subject only to harmless error review. Because errors occurring at the indictment, trial, and sentencing phases of proceedings are subject to harmless error review individually, we conclude that the three in conjunction likewise can be harmless. *See Vazquez*, 271 F.3d at 103. In short, we see no reason why the differences between this case and *Vazquez* should be given "constitutional significance." *Recuenco*, 548 U.S. at 220.

Our conclusion is also supported by *Cotton*, which ultimately held that the Sixth Amendment petit jury right, like the Fifth Amendment grand jury right, "serves a vital function . . . as a check on prosecutorial power." 535 U.S. at 634. It went on to state that the Sixth Amendment petit jury right was "at least as important" as the Fifth Amendment grand jury right. *Id.* The Court, therefore, implied that it would not treat Fifth Amendment indictment error differently than Sixth Amendment trial error because the Fifth Amendment grand jury right is no more sacrosanct—and thus no more worthy of heightened protection—than the Sixth Amendment right that is subject only to harmless error review.

Similarly, we are persuaded by the government's compelling argument highlighting the nature of the Fifth Amendment grand jury right as it compares to the Sixth Amendment right to a petit jury. Specifically, the government notes that, unlike the right to a petit jury: (1) the Fifth Amendment grand jury right has not been deemed so fundamental as to be applicable to the states by way of the Fourteenth Amendment; (2) the grand jury is not the final

19

arbiter of the facts, and must only find facts by a preponderance of the evidence; and (3) the petit jury provides far greater protection for the accused by operating in public, relying upon admissible evidence from both the prosecution and the accused, and voting unanimously to convict.

The government contends that, based upon the factors listed above, the Sixth Amendment right to a petit jury provides more robust protections that go to the "'framework within which the trial proceeds,'" and is thus more worthy of protection under the ambit of structural error than the Fifth Amendment grand jury right. *Vazquez*, 271 F.3d at 103 (quoting *Fulminante*, 499 U.S. at 310). Yet, despite these important considerations, the Supreme Court has never extended the structural error doctrine to include an abridgment of the Sixth Amendment right of the type at issue in this case. *See Recuenco*, 548 U.S. at 222 ("Failure to submit a sentencing factor to a jury . . . is not structural error."); *Neder*, 527 U.S. at 15 ("The omission of an element [from a jury instruction] is an error that is subject to harmless-error analysis."). Given the comparative weaknesses in the Fifth Amendment right, the Supreme Court is therefore less likely to find structural error in a situation like Lewis's. We agree with the government that this consideration weighs in favor of applying harmless error review in this case.

Finally, we note that our decision comports with that of every court of appeals to have addressed this issue in the context of *Alleyne* error. *See United States v. Harakaly*, 734 F.3d 88, 94-95 (1st Cir. 2013) (noting that "[i]n light of the long line of cases subjecting preserved *Apprendi* errors to harmless-error review, there would appear to be no basis for finding *Alleyne* error to be one of those rare cases to which harmless-error review does not apply"); *United States v. McKinley*, 732 F.3d 1291, 1295-96 (11th Cir. 2013) (applying

20

plain error review of *Alleyne* error in which indictment and jury charge both involved use or carrying of a firearm, but sentence was for brandishing);[11] *United States v. Mack*, 729

---

[11] We note that almost none of the decisions Lewis cites in his brief involve *Apprendi* error—which is the most closely analogous situation to his case. This omission is unsurprising because courts of appeals have "almost uniformly held that the failure of the indictment to include the *Apprendi*-element, like the failure to submit that element to the jury, [is] subject to harmless error review." 5 Wayne R. LaFave et al., Criminal Procedure § 19.3(a) (3d ed. 2007). Indeed, courts of appeals routinely subject *Apprendi* errors at both the indictment and conviction stage to harmless or plain error review. *See United States v. Confredo*, 528 F.3d 143, 156 (2d Cir. 2008) (finding that *Apprendi* errors stemming from indictment omissions are reviewed for harmless error); *United States v. Perez-Ruiz*, 353 F.3d 1, 14, 17 (1st Cir. 2003) (finding that preserved *Apprendi* errors are reviewed for harmless error); *United States v. Mackins*, 315 F.3d 399, 405-06, 409-10 (4th Cir. 2003) (recognizing applicability of harmless error review to *Apprendi* error); *United States v. Baptiste*, 309 F.3d 274, 277 (5th Cir. 2002) (recognizing a change in circuit precedent and applying harmless error review to *Apprendi* error in indictment); *United States v. Stewart*, 306 F.3d 295, 318-21 (6th Cir. 2002) (rejecting structural error argument and applying harmless error review to alleged *Apprendi* error); *United States v. Jordan*, 291 F.3d 1091, 1095-96 (9th Cir. 2002) (applying harmless error where drug quantity was neither alleged in the indictment nor proved to a jury beyond a reasonable doubt, but concluding that record was not sufficient to demonstrate that error was harmless); *United States v. Adkins*, 274 F.3d 444, 454 (7th

---

21

F.3d 594, 606-09 (6th Cir. 2013) (rejecting structural error argument and analyzing *Alleyne* error for plain error); *United States v. Kirklin*, 727 F.3d 711, 718-19 (7th Cir. 2013) (applying plain error review to alleged *Alleyne* error); *Lara-Ruiz*, 721 F.3d at 557-58 (recognizing that *Apprendi* errors (and by extension, *Alleyne* errors) are not structural, but reversing on ground that defendant failed to meet plain error

Cir. 2001) (recognizing that *Apprendi* errors of failing to allege a drug quantity in an indictment are subject to harmless error review); *Vazquez*, 271 F.3d at 103 (finding that *Apprendi* error is not a structural defect); *United States v. Smith*, 240 F.3d 927, 930 (11th Cir. 2001) (recognizing that harmless error review applies to *Apprendi* errors);*United States v. Anderson*, 236 F.3d 427, 429 (8th Cir. 2001) (applying harmless error review to alleged *Apprendi* error). Because courts have consistently analyzed *Apprendi* errors under the paradigm set forth in Rule 52 (either under plain error or harmless error), that practice is persuasive for finding that structural error is not applicable in the present case. *See Harakaly*, 734 F.3d at 94 ("Since *Alleyne* is an extension of the *Apprendi* doctrine, the same standards should apply to *Alleyne* errors.").

standard).[12]  Absent any authority to the contrary, harmless error review is appropriate in this case.

In light of the foregoing, we hold that when an indictment fails to charge a sentencing factor or element of an offense and the jury fails to find the same beyond a reasonable doubt, the resulting *Alleyne* error is not structural. When properly preserved, such error is reviewed for harmlessness under Rule 52(a).

> 2. *Lewis's due process, automatic reversal, and constructive amendment arguments*

Before we apply the harmless error test, we must address Lewis's remaining arguments that, even if *Alleyne* error is not structural, reversal and remand is necessary in his case.  He asserts three arguments: First, that due process considerations require reversal where a defendant was charged and convicted of a crime different than that for which he was sentenced; second, that the "automatic reversal" rule requires remand in this case; and third, that his sentence

---

[12] Lewis cites extensively to the Eighth Circuit's decision in *Lara-Ruiz*, but we find that his reliance is misplaced in the context of his structural error argument.  That case explicitly rejected the application of structural error with respect to both *Apprendi* and *Alleyne*.  *Lara-Ruiz*, 721 F.3d at 557 ("This circuit has held that *Apprendi* errors do not create structural error that would require per se reversal. . . . Given this background, and considering that *Alleyne* was decided to reconcile statutory minimums with the Court's reasoning in *Apprendi* . . . it follows that review pursuant to Rule 52's standards should be applied to this case." (citations omitted)).  Structural error was therefore not at issue in *Lara-Ruiz*.

reflects an impermissible constructive amendment of the indictment. We address each argument below.

*Due process*

Lewis first relies upon the Supreme Court's decision in *Dunn v. United States* for the proposition that "appellate courts are not free to revise the basis on which a defendant is convicted simply because the same result would likely obtain on retrial." 442 U.S. 100, 107 (1979). *Dunn*, he contends, identifies due process concerns in this case that require reversal. We disagree. *Dunn* is distinguishable because it involved a challenge to the defendant's conviction on grounds that the indictment was insufficient to support the conviction.

*Dunn* turned on whether an interview in an attorney's office constituted an "ancillary" proceeding as used in 18 U.S.C. § 1623.[13] 442 U.S. at 102. The indictment charged that the statements made in the attorney's office were false because they were inconsistent with the defendant's prior testimony before a grand jury. *Id.* at 103-04. The district court and the court of appeals upheld the conviction based instead on inconsistencies between the defendant's grand jury testimony and his testimony at an evidentiary hearing (not his statements in the attorney's office). *Id.* at 104-05.

The Supreme Court reversed, concluding that the statements made in the attorney's office were not "ancillary" to a court proceeding. *Id.* at 113. Because the indictment

---

[13] Section 1623 states, in pertinent part, that "[w]hoever under oath . . . in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration . . . shall be fined under this title or imprisoned not more than five years, or both." 18 U.S.C. § 1623(a).

24

relied solely on the statements in the attorney's office, it failed to state an offense within the scope of the statute. *Id.* at 107. The facts alleged in the indictment against Dunn therefore did not support a finding of *any* criminal conduct, even though other facts developed at trial did. Lewis, on the other hand, does not challenge his conviction in this appeal. Indeed, there is no dispute over whether the indictment stated an offense. This fact alone is sufficient to distinguish *Dunn* and render it inapplicable to this case.

Moreover, although *Dunn* did recognize the potential due process pitfalls associated with an insufficient indictment, its holding is consistent with ours today for two reasons. First, *Dunn* was decided before the acknowledgement in *Neder* that most constitutional errors can be harmless. Courts now apply harmless error review even where the indictment fails to include a sentencing factor. *See Recuenco*, 548 U.S. at 221-22. To the extent that *Dunn* did not recognize that constitutional errors can be harmless, it should be limited to its facts and not be broadly applied to situations like Lewis's. Second, neither *Neder* nor *Apprendi* cited *Dunn*, nor has the Supreme Court found reversal to be necessary when an indictment fails to charge an element of the offense. *See, e.g.*, *Cotton*, 535 U.S. at 629-33 (holding that failure to allege an element in the indictment is not a "jurisdictional defect" that requires automatic reversal where evidence of the missing element was "overwhelming" and "essentially uncontroverted"). In light of the subsequent Supreme Court precedent, we conclude that the due process concerns addressed in *Dunn* only arise in situations where an indictment fails to charge *any* offense. It is thus not controlling in this case.

25

*Automatic reversal*

Lewis's second argument is that we should apply the so-called "automatic reversal rule" to the *Alleyne* error in this case. He again relies upon decisions that predate *Neder* and *Apprendi* in support, and we reject it on the basis that none of the decisions he cites are analogous to this case.

Much like *Dunn*, the decisions Lewis cites in support of automatic reversal involved defective indictments that failed to allege *any* criminal conduct. *See United States v. Wander*, 601 F.2d 1251, 1258-59 (3d Cir. 1979) (failure to allege a subsequent overt act in a prosecution for violation of the Travel Act, 18 U.S.C. § 1952(a)); *United States v. Beard*, 414 F.2d 1014, 1015 (3d Cir. 1969) (failure to allege "unlawful or fraudulent intent" in prosecution for interstate transport of stolen property, 18 U.S.C. § 2314); *United States v. Manuszak*, 234 F.2d 421, 422-23 (3d Cir. 1956) (failure to allege "the specific place or facility from which the goods were taken" in prosecution for theft of goods from an interstate shipment of freight pursuant to 18 U.S.C. § 659); *see also United States v. Pickett*, 353 F.3d 62, 67-68 (D.C. Cir. 2004) (failure to allege that false statements were made "within an 'investigation or review'" in a prosecution for making false statements, 18 U.S.C. § 1001); *United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999) (failure to allege that defendant acted knowingly or willingly in a prosecution under the Hobbs Act, 18 U.S.C. § 1951). Lewis's reliance on these cases misses the mark because they all address situations where there was *no criminal conduct alleged*, and thus the indictment was susceptible to dismissal pursuant to Federal Rule of Criminal Procedure 12(b)(3), or arrest of

26

judgment pursuant to Rule 34(a).[14]  That is not the situation here, where Lewis does not challenge his indictment or conviction, and where both assert a valid § 924 offense. Because courts of appeals almost universally apply harmless error in *Apprendi* and *Alleyne* situations, we reject Lewis's contention that automatic reversal is appropriate in this case.

### *Constructive amendment*

Lewis's final argument is based upon the Eighth Circuit's decision in *Lara-Ruiz*, which addressed *Alleyne* error under the plain error standard and found that substantial rights were affected where the defendant "was sentenced for a statutory crime different from that which the jury found him guilty."  721 F.3d at 558 (addressing situation where the defendant was convicted of using a firearm under § 924 but was sentenced for brandishing).  We reject Lewis's argument because we find *Lara-Ruiz*'s reasoning to be inconsistent with our interpretation of the substantial rights inquiry under harmless error.

----

[14] Courts have even applied harmless error where a defect in the indictment could be grounds for dismissal.  *See, e.g.*, *United States v. Cor-Bon Custom Bullet Co.*, 287 F.3d 576, 580-81 (6th Cir. 2002) (failure to allege an affirmative act in a tax evasion case is harmless error); *United States v. Corporan-Cuevas*, 244 F.3d 199, 201-02 (1st Cir. 2001) (finding that failure to allege an element when there is question as to whether the element is "essential" is subject to harmless error); *United States v. Mojica-Baez*, 229 F.3d 292, 311 (1st Cir. 2000) (finding that the failure to allege an essential element of the offense in the indictment is subject to harmless error review where the indictment otherwise gives the defendant notice of the charges against him).

Without explicitly characterizing it as such, the court in *Lara-Ruiz* appears to have arrived at the outcome in that case by finding a constructive amendment of the indictment. Constructive amendment "occurs where a defendant is deprived of his 'substantial right to be tried only on charges presented in an indictment returned by a grand jury.'" *United States v. Syme*, 276 F.3d 131, 148 (3d Cir. 2002) (quoting *United States v. Miller*, 471 U.S. 130, 140 (1985)). We have found constructive amendments to be "'per se reversible under harmless error review.'" *United States v. Daraio*, 445 F.3d 253, 259-60 (3d Cir. 2006) (quoting *Syme*, 276 F.3d at 136); *see also Stirone v. United States*, 361 U.S. 212, 217-19 (1960) (seminal decision recognizing constructive amendment).[15] In essence, the Eighth Circuit emphasized the dissonance between the indictment and conviction, on the one hand, and the sentence imposed, on the other.

We are not persuaded by Lewis's argument based upon *Stirone* and its progeny because we have suggested in *dictum* that constructive amendments are not structural errors. *Syme*, 276 F.3d at 155 n.10 ("We note, however, that it is doubtful that constructive amendments are structural errors as the Supreme Court has defined that category. . . . Notably,

---

[15] *Stirone* relied heavily upon the earlier decision in *Ex Parte Bain*, 121 U.S. 1 (1887). *Bain*, however, was later overruled by *Cotton* "insofar as [*Bain*] held that a defective indictment deprives a court of jurisdiction." *Cotton*, 535 U.S. at 631. Lewis relies on *United States v. Spinner*, which, like *Bain*, found automatic reversal to apply on grounds that "the indictment in [Spinner's] case was jurisdictionally defective." 180 F.3d 514, 516 (3d Cir. 1999). Reversal for jurisdictional reasons is now prohibited by the holding in *Cotton*, and *Spinner* is thus of limited utility in this case.

neither *Johnson* nor *Neder* cited *Stirone* or listed constructive amendments as one of the narrow class of recognized structural errors."). "Courts viewing the *Apprendi*-element pleading error as essentially presenting a constructive amendment issue . . . distinguish the *Stirone* precedent . . . in the course of supporting application of a harmless error standard." LaFave et al., Criminal Procedure § 19.3(a) (citing, *inter alia*, *McCoy v. United States*, 266 F.3d 1245, 1253-54 (11th Cir. 2001) (finding that *Apprendi* errors are not constructive amendments subject to automatic reversal under *Stirone*, but instead represent, at most, a variance subject to harmless error review)). We agree with this approach and likewise reject *Lara-Ruiz*'s constructive amendment argument.

Multiple courts of appeals have similarly rejected the notion that the *Stirone* constructive amendment rule requires *per se* reversal in *Apprendi* cases. *See McCoy*, 266 F.3d at 1253-54; *Mojica-Baez*, 229 F.3d at 310-11 (rejecting an argument seeking automatic reversal under *Stirone* and noting that "there is no reason to think the grand jury would have had any trouble in rendering an indictment specifying the weapons used, and there was no variance"). *McCoy* provides two reasons why automatic reversal is not necessary in *Apprendi/Alleyne* error situations. First, *Apprendi* errors do not present "typical" indictment problems, i.e., where the indictment fails to state any offense; instead, the indictment in an *Apprendi* case "still charges a complete federal offense." *McCoy*, 266 F.3d at 1253. Second, the court rejected the notion that any variance in an *Apprendi* case is so substantial as to require automatic reversal. *Id.* at 1253-54. Specifically, the court noted that "*Stirone* involved a material difference between the facts alleged in the indictment in support of that element—extortion in the transportation of *sand* from other

states into Pennsylvania—and the facts shown at trial—extortion in the transportation of *steel* from Pennsylvania into Michigan and Kentucky." *Id.* at 1253 (citing *Stirone*, 361 U.S. at 213-14). This difference in proof "materially broadened and altered [the indictment] to such a significant extent as to constitute an entirely new or different theory of the case." *Id.* No such difference in proof exists in *Alleyne* or *Apprendi* cases, where the only difference is with respect to a particular statutory subsection that aggravates the punishment imposed, not the entire "theory of the case." *Id.* We agree with the reasoning in *McCoy* that constructive amendment does not apply to the facts of this case and ultimately conclude that Lewis's substantial rights were not affected.

## C.    Harmless error standard

We now determine whether the facts of this case demonstrate that the sentence imposed for brandishing was harmless error.[16] Lewis makes no argument with respect to the factual basis for finding harmless error, but the government identifies several facts in the record indicating that both the grand and petit juries in this case would, absent the *Alleyne* error, have found beyond a reasonable doubt that Lewis brandished a firearm.

In the context of *Apprendi* error, particularly where the defendant challenges the sentence imposed (as is the case here), we have defined the substantial rights inquiry as "determining whether [the sentence] would have been the

---

[16] We questioned whether Lewis objected to the "brandishing" element at sentencing for purposes of preserving his *Alleyne* argument on appeal. The government concedes this point and we are thus satisfied that review for harmless error is appropriate. *See* Fed. R. Crim. P. 52(a).

30

same absent the failure to submit [the brandishing element] for a jury determination." *Vazquez*, 271 F.3d at 104. That determination must be made beyond a reasonable doubt, and the government bears the burden of proof. *Id.*; *Olano*, 507 U.S. at 734. Because Lewis also alleges error at the indictment stage, we first consider whether the grand jury, if asked, would have charged him with brandishing a firearm.

With respect to the indictment, there is no question that the grand jury did in fact find that the brandishing element was satisfied. The Second Superseding Indictment, in the context of the Hobbs Act count, alleges that the defendants "point[ed] firearms at the customers and employees, order[ed] them to the floor, and threatene[d] to shoot them." App. at 70. Section 924 defines "brandishing" as "to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person." 18 U.S.C. § 924(c)(4). The allegations already in the indictment, therefore, are more than sufficient to satisfy the brandishing element. The government is correct that had prosecutors asked the grand jury to include this language in the § 924(c) count it would have been included and would have eliminated any defect with respect to the indictment. Any error with respect to the indictment was, therefore, harmless.

The evidence adduced at trial was likewise sufficient to demonstrate beyond a reasonable doubt that Lewis's sentence would have been the same absent the failure to submit the brandishing element to the jury. *See Vazquez*, 271 F.3d at 104. The government met its burden by presenting testimony from Anderson and Vazquez, both of whom confirmed that Lewis was one of the three men who entered the speakeasy and "stood in the doorway with the gun on

31

everybody." App. at 876. Vazquez testified that the gun was "pointed at [him] and pointed at several other people," App. at 970, and at one point Lewis "pulled [Vazquez's] shirt up, [and] put the gun to [his] stomach." App. at 971. He reported "fearing for his life." App. at 1044-45.

Lewis essentially concedes that this record evidence supports the District Court's finding that he brandished a firearm during the robbery, and we agree that the testimony supports that conclusion. *See Neder*, 527 U.S. at 17 (finding error to be harmless "where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence"). Indeed, Lewis presents no evidence to rebut the government's showing at trial. The testimony from Anderson and Vazquez clearly demonstrates that Lewis went beyond mere "use" of a firearm, and instead brandished it as per the requirements of § 924(c)(4). It is safe to conclude, therefore, that in light of the "'overwhelming' and 'uncontroverted' evidence" in support of the brandishing element that, had the jury been properly instructed on that element, it would have found that element beyond a reasonable doubt. Any resulting error was therefore harmless.

IV.

For the foregoing reasons we will AFFIRM the sentence imposed by the District Court.

32

RENDELL, *Circuit Judge*, dissenting

Jermel Lewis was sentenced for the crime of brandishing a firearm in relation to a crime of violence, when he had been not been indicted for, and the jury had not convicted him of, that crime. The District Court improperly sentenced Lewis in accordance with a mandatory minimum of seven years. Had this error not occurred, Lewis would have been sentenced with a mandatory minimum of five years. I submit that this constitutes reversible error that is not harmless, because it violated Lewis's Sixth Amendment rights, as clearly announced in *Alleyne*, and the resulting sentence was more harsh than it should have been.

At the outset, I note that *Alleyne*'s pronouncement – which is controlling here – was made without the issue of structural or harmless error having been discussed. Perhaps it was not raised, or perhaps a sentencing error concerning the mandatory maximum or minimum – based on facts not found by the jury – was so clearly a harmful violation of the Sixth Amendment that it made the very idea of harmless error unthinkable. I also note that the jurisprudence in the area of structural versus harmless error, discussed below, is very nuanced and we lack specific guidance in the area before us. Thus, we must reason as best we can in this difficult, but important, area of the law.

We begin with the understanding that what happened here was without a doubt wrong, and a wrong of constitutional significance. The issue then is *how* wrong and what to do about it. In *Alleyne*, an identical violation required a remand "for resentencing consistent with the jury's verdict." 133 S. Ct. 2151, 2164 (2013). I suggest that here, no matter

what lens of review governs our reasoning, whether for harmless or structural error, the result must be the same. The District Court's sentence must be vacated and Lewis resentenced with the correct mandatory minimum; *Alleyne* requires no less.

## I.  Sentencing Error

The most straightforward way to reason to this result is to first concede, for the sake of argument, that harmless error review governs (though I challenge this at length below). But it is critical to locate precisely what type of error is at issue. The error here was that Lewis was *not sentenced* "consistent with the jury's verdict," as *Alleyne* requires. *Id.* The *Alleyne* Court did not order a new trial, so that the missing brandishing element could be proven to the jury, but rather required a resentencing, thus properly regarding the error as having occurred at the sentencing phase, and harmlessness here must be judged from that vantage point. How can Lewis's sentence, imposing a mandatory minimum of seven years, be harmless, when without the brandishing finding the mandatory minimum would have been five years?

The error caused by the District Court was not, as it was not in *Alleyne*, a trial error. Had it been, the majority's look back at what the evidence revealed at trial would be an appropriate exercise in testing for harmlessness. But it is not the proper inquiry here. I suggest, after *Alleyne*, that given the nature of the error before us, the question is simply whether Lewis was prejudiced by his unconstitutional sentence. He clearly was.

Our precedent concerning non-constitutional sentencing errors confirms this conclusion. In *United States v. Langford*, 516 F.3d 205, 216 (3d Cir. 2008), we held that where a district court uses an erroneous Guidelines range at sentencing, "[t]he record must show that the sentencing judge would have imposed the same sentence under a correct Guidelines range, that is, that the sentencing Guidelines range did not affect the sentence actually imposed." That inquiry involves only an examination into the district court's statements at sentencing, to determine whether it would have imposed the same sentence even absent the Guidelines error. *Id.* at 219. We do not delve into the facts of a defendant's conviction, to determine whether the improper sentence could somehow be justified. Thus, it appears that if Lewis had framed his challenge as one asserting that the District Court improperly calculated his Guidelines range, the case would be remanded for resentencing. The same should occur pursuant to his challenge of the far more serious constitutional violation: that the District Court sentenced him for an uncharged, unproven crime.[1]

In justifying its use of the trial record to uphold Lewis's sentence, the majority relies heavily on our 2001 opinion in *Vazquez*, where we determined that an *Apprendi* error was both a trial and a sentencing error. 271 F.3d 93 (3d

---

[1] Indeed, we are bound by statute to remand under such circumstances. *See* 18 U.S.C. § 3742(f)(1) ("If the court of appeals determines that . . . the sentence was imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines, the court shall remand the case for further sentencing proceedings with such instructions as the court considers appropriate . . . .").

Cir. 2001) (*en banc*). Of note, *Vazquez* was a close case, with six of our thirteen judges agreeing with Judge Sloviter's view in dissent that – as I again posit – *Apprendi* and therefore *Alleyne* involve errors that require us to decide whether what occurred at sentencing was harmless. As Judge Sloviter noted, courts have routinely remanded for resentencing when an *Apprendi* error occurs. *Id.* at 120 (Sloviter, J. dissenting). Distinguishing *Johnson* and *Neder*, relied upon by the majority in *Vazquez*, and again cited by the majority today, Judge Sloviter recognized that:

> In neither case was the sentence at issue; rather the issue was whether to uphold or reverse the jury's verdict of guilty. Here, we must decide whether an increase in prison time as a result of the error affects the defendant's substantial rights. As a result, those cases are inapposite here.

*Id.* at 121.

I joined Judge Sloviter's dissent and also wrote separately to emphasize that at no point did *Apprendi* indicate that such an unconstitutional sentence might be harmless simply because judges find it justified. *Id.* at 130 (Rendell, J. dissenting). The same can be said for *Alleyne*. As Judge Sloviter concluded in *Vazquez*: "An error that will cause a defendant to spend four plus years more in prison than statutorily authorized by the jury's verdict necessarily adversely affects the defendant's substantial rights." *Id.* at 120 (Sloviter, J dissenting). This is an even clearer case for

4

remand than *Vazquez*, which was examined for plain error, as here we review Lewis's appeal *de novo*, requiring only "harm" under Fed. R. Crim. Pro. 52(a).

Even leaving aside Judge Sloviter's persuasive reasoning in *Vazquez*, that case is materially distinguishable in a way that should alter the result here. In *Vazquez* the indictment properly alleged that the defendant had conspired to possess and distribute five kilograms or more of cocaine. 271 F.3d at 101. The *Vazquez* court therefore determined that the case involved a "*trial error*, which occurred when drug quantity was not submitted for a jury determination." *Id.* (emphasis in original). Thus, it was at least arguable in that case that an error had occurred at trial because the jury was not asked to find the crime alleged in the indictment.

But, in *Alleyne* as here, there was no trial error. There was nothing wrong with the count of the indictment charging Lewis with a *using or carrying* violation. There was similarly no omission at trial, in the jury charge or on the verdict sheet. And once the jury had been instructed, and had convicted Lewis of using or carrying a gun in relation to a violent crime, the District Court was required to sentence him pursuant to the applicable five year mandatory minimum. This the Court failed to do. Instead, it violated Lewis's due process and Sixth Amendment rights when it sentenced him for an offense not found by the jury. In sum, Lewis was charged, tried and convicted of one complete crime, but the District Court sentenced him for a different offense. This was a pure and simple sentencing error.

Looking just to the length of Lewis's prison term, if the error had not been committed he would have been

5

sentenced for his crime of conviction, such that his sentence would have been likely shortened by two years. This alone constitutes clear prejudice and, therefore, reversible error. *See United States v. Promise*, 255 F.3d 150, 160 (4th Cir. 2001) (finding prejudice where defendant was sentenced for term in excess of that charged or found by jury).

More fundamentally, it is inherently prejudicial for a defendant to be sentenced for a crime of which he was neither charged nor convicted. The Eighth Circuit recognized this point in deciding one of the few other cases involving an *Alleyne* violation where a defendant was sentenced for a crime that was neither alleged in the indictment nor submitted to the petit jury. *United States v. Lara-Ruiz*, 721 F.3d 554 (8th Cir. 2013). That court examined the case from the perspective of sentencing error, and held correctly that the defendant there was prejudiced "because he was sentenced for a statutory crime different from that which the jury found him guilty." *Id.* at 558.

The Supreme Court has long upheld this elementary principle. In *Cole v. State of Arkansas*, two defendants were charged and convicted of promoting an unlawful assemblage, but on appeal the state supreme court affirmed the conviction pursuant to a different offense involving the use of violence. 333 U.S. 196 (1948). In a unanimous opinion the Supreme Court reversed. It found that the state supreme court had "affirmed [defendants'] conviction as though they had been tried and convicted of a violation of [section 1] when in truth they had been tried and convicted only of a violation of a single offense charged in [section 2], an offense which is distinctly and substantially different from the offense charged in [section 1]." *Id.* at 202. The Court added, "[i]t is as much

6

a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made." *Id.* at 201. In this case, Lewis was sent to prison on a brandishing charge which was never made *and* on which he was never tried.

That this violates the basic guarantee of due process has been repeatedly reaffirmed both by the Supreme Court and the Third Circuit. *Dunn v. U.S.*, 442 U.S. 100, 106 (1979) ("To uphold a conviction on a charge that was neither alleged in an indictment nor presented to a jury at trial offends the most basic notions of due process.")[2]; *Jackson v. Virginia*, 443 U.S. 307, 314 (1979) ("It is axiomatic that a conviction upon a charge not made or upon a charge not tried constitutes a denial of due process."); *Lambert v. Blackwell*, 387 F.3d 210, 246 (3d Cir. 2004) ("[A] defendant's due process rights are violated when his conviction is affirmed on

---

[2] The majority misconstrues *Dunn*. The Court there noted that the defendant had been charged and convicted on the basis of false statements made in an interview in September, but the Tenth Circuit affirmed the conviction on the basis of testimony made in October. 445 U.S. at 106. The Court held that "appellate courts are not free to revise the basis on which a defendant is convicted simply because the same result would likely obtain on retrial." *Id.* at 107. Thus, the conviction had to stand or fall on the sufficiency of the charge presented to the jury, namely the September statements alone. The relevance of that case is obvious: "[f]ew constitutional principles are more firmly established than a defendant's right to be heard on the specific charges of which he is accused." *Id.* at 106.

an offense that he was not charged with and that was not presented to the jury or court that tried him.").

*Alleyne* itself adhered to this understanding. Writing for the Court, Justice Thomas found that:

> It is obvious, for example, that a defendant could not be convicted and sentenced for assault, if the jury only finds the facts for larceny, *even if the punishments prescribed for each crime are identical*. One reason is that each crime has different elements and a defendant can be convicted only if the jury has found each element of the crime of conviction.

133 S. Ct. at 2162 (emphasis added). The Court proceeded to hold that "similarly," a brandishing offense constitutes a "separate, aggravated offense" from a using or carrying offense. *Id.* Thus, pursuant to *Alleyne*, sentencing a defendant for brandishing when he was only convicted of using or carrying, is not materially different from sentencing a defendant for assault if he was only convicted of larceny.

In sum, Supreme Court precedent establishes that sentencing a defendant for an uncharged, untried crime constitutes reversible error. It is equally clear that a defendant is prejudiced where an appellate court affirms a conviction or sentence upon anything other than the crime in the indictment and jury verdict. To condone Lewis's

8

sentence here as merely "harmless error" would violate both fundamental precepts of our criminal justice system.[3]

Indeed, the majority's exercise, in determining whether there was sufficient evidence of brandishing at trial to render the error harmless, guts the essence of *Alleyne*. There, the Court concluded that:

> The District Court imposed the 7–year mandatory minimum sentence based on its finding by a preponderance of evidence that the firearm was "brandished." Because the finding of brandishing increased the penalty to which the defendant was

---

[3] Comparing this violation to a constructive amendment further establishes the necessity of resentencing. "An indictment is constructively amended when, in the absence of a formal amendment, the evidence and jury instructions at trial modify essential terms of the charged offense in such a way that there is a substantial likelihood that the jury may have convicted the defendant for an offense differing from the offense the indictment returned by the grand jury actually charged." *United States v. Vosburgh,* 602 F.3d 512, 532 (3d Cir. 2010). "Constructive amendments are *per se* reversible under harmless error review . . . ." *United States v. Daraio*, 445 F.3d 253, 260 (3d Cir. 2006). I cannot reconcile our established precedent concerning constructive amendment with the majority's decision. Going forward, constructively amending the indictment during trial is *per se* reversible, but the same act during sentencing may be harmless.

> subjected, it was an element, which had to be found by the jury beyond a reasonable doubt. The judge, rather than the jury, found brandishing, thus violating petitioner's Sixth Amendment rights.

*Id*. at 2163-64. The look back to the trial record that the majority performs perpetuates the very error deemed to be reversible in *Alleyne*: judges substituting their view for the jury verdict, and thereby imposing a sentence which violates the Sixth Amendment. In so doing, today's decision impermissibly designates both the indictment and petit jury verdict a "mere preliminary to a judicial inquisition into the facts of the crime the State *actually* seeks to punish." *Blakely v. Washington*, 542 U.S. 296, 307 (2004) (emphasis in original).

The lesson of *Alleyne* is that juries, not judges, must find the elements of a crime that support the sentence imposed. The majority's harmlessness exercise completely upends this principle, finding that judges can determine statutory elements from the facts in a trial, and uphold a sentence in direct conflict with the indictment and verdict. For that reason, even under a harmless error standard, I would vacate the sentence and remand for resentencing.


## II.  Charging Error

As noted above, the majority's analysis proceeds from an entirely different premise: the sentence is fine as long as

the other "errors," namely charging errors and trial errors, were all harmless.  I do not endorse this mode of analysis and *Alleyne* certainly did not rule on that basis, having discussed the deficient indictment (which also failed to allege brandishing) only as it related to the conclusion that brandishing constitutes an element of a distinct crime. At no point in that opinion did the Court characterize the issue as a charging or trial error.

It is clear why that was the case.  To deem this a case of trial error, one must hold that error infected every aspect of Lewis's proceedings except for the sentence itself.  That is, the majority assumes that the grand jury charge, the petit jury charge, the verdict sheet and the verdict itself were all in error, but then says those errors are subjected to a harmlessness inquiry, rather than a finding of structural error.  This analysis turns the case on its head, in defiance of both logic and common sense.

But even if we were to view the case upside down, as the majority insists we must, the errors at issue then become clearly structural.  Specifically, how can the failure to charge a crime, for which a defendant is later sentenced, not infect the entire proceedings so as to be structural error?  In 2006, the Supreme Court granted certiorari on the exact question the majority addresses today: whether a materially defective indictment can constitute harmless error.  Yet in that case, *United States v. Resendiz-Ponce*, 549 U.S. 102 (2007), the Court avoided the question, instead deciding that the

11

indictment at issue was adequate. We are therefore left without any binding precedent on this issue.[4]

The majority's assessment of the relevant case law in this area is selective and incomplete. First, the majority cites to our holding in *Vazquez* where we held that the *Apprendi* violation there, the failure to submit a drug quantity to a jury, constituted harmless error. Yet the majority concedes that Lewis's case is significantly different from *Vazquez* as here we have the "addition of error at the indictment stage." (Maj. Op. at 17.) Given that we characterized *Vazquez* as a case involving both trial error and sentencing error, under the majority's view this case involves indictment error, trial error and sentencing error all of constitutional magnitude. Thus, even under the majority's formulation, a constitutional error affected Lewis's case from beginning to end.

I agree with the majority when it acknowledges that *Vazquez* does not control the analysis here, as it did not concern a materially defective indictment. (Maj. Op. at 17.) Perhaps recognizing this yawning gap in case law, the majority relies most heavily on *Washington v. Recuenco*, 548 U.S. 212 (2006*)*, urging that it "provides the missing link . . . because it recognized that errors in an indictment can be harmless." (Maj. Op. at 18.) This is incorrect. The majority opinion in *Recuenco* never once mentions errors in an

---

[4] The circuit split that compelled the Court to take the case still remains. *Compare United States v. Higgs*, 353 F.3d 281, 305-06 (4th Cir. 2003) (reviewing defective indictment for harmless error) *with United States v. Inzunza*, 638 F.3d 1006, 1016-17 (9th Cir. 2011) ("A defective indictment is a structural flaw not subject to harmless error review.")

12

indictment, the Fifth Amendment, or the defendant's right to a grand jury, and it is obvious why. That case concerned a state prosecution which involved an information, rather than an indictment. *Recuenco*, 548 U.S. at 224 (Ginsburg, J. dissenting).

Further, the Court there noted that the defendant had attempted to "characterize[e] this as a case of charging error, rather than of judicial factfinding." *Id*. at 220 n.3. But, the Supreme Court of Washington had looked only to whether the lack of a petit jury finding on a sentencing factor was structural error. The Supreme Court therefore decided to "treat" the case "similarly." *Id*. Accordingly, the sole holding of *Recuenco* was the uncontroversial proposition that, "[f]ailure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error." *Id.* at 222. In sum, the majority opinion in *Recuenco* does not deal at all with the issue of indictment error, and accordingly could not have "recognized" that "errors in an indictment can be harmless." *Recuenco* is not the "missing link" the majority is searching for.

Yet the majority agrees with the Government and reiterates its claim that the Sixth Amendment is "more worthy of protection under the ambit of structural error than the Fifth Amendment grand jury right." (Maj. Op. at 20.) This is a dubious proposition at best, and has never been propounded by any opinion of the Supreme Court or our court.[5] *Vazquez,*

---

[5] The majority overlooks the fact that indictments safeguard not only the Fifth Amendment guarantee of charging by a grand jury, but also the Sixth Amendment right to "to be informed of the nature and cause of the accusation." U.S.

13

seemingly cited by the majority as authority for this idea, says nothing of the sort.[6]

The question is not which Amendment is more worthy of protection. The issue before us is simply whether a *specific type* of constitutional violation is significant enough

---

Const. amend. VI; *see, e.g., United States v. Radowitz*, 507 F.2d 109, 111-12 (3d Cir. 1974) (finding that an "indictment: (1) fulfills the Sixth Amendment 'apprisal' requirement by providing a defendant with notice of the charges against him in order that he may prepare a defense . . . .").

[6] I disagree with the majority's claim that, in *Cotton*, the Court "implied that it would not treat Fifth Amendment indictment error differently than Sixth Amendment trial error . . . ." (Maj. Op. at 19.) In fact, the issue before the Court was waiver of rights, and the Court briefly compared the two Amendments only to note the "longstanding rule 'that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right . . . .'" 535 U.S. at 634 (quoting *Yakus v. United States,* 321 U.S. 414, 444 (1944)). In other words, the Court clarified that both Fifth and Sixth Amendment violations may be waived, and thus reviewable only for plain error, due to a failure to timely object. That is not at issue here, as both parties agree that Lewis timely asserted his Fifth Amendment rights. *Cotton* does not speak to the question before us, nor does it "imply" any answer, as the Court explicitly did "not resolve" the question of whether defective indictments could constitute structural error. *Id.* at 632.

14

to constitute structural error.[7]  It is this question, left unaddressed by the majority, to which I now turn.

The Supreme Court has used varying language in categorizing constitutional errors.[8]  In one of the more recent

---

[7] I note separately that the majority's claim of uniform agreement with other circuits is misplaced.  The Ninth Circuit has maintained that a deficient indictment is structural error. *United States v. Inzunza*, 638 F.3d 1006, 1016-17 (9th Cir. 2011).  In addition, three of the cases cited by the majority either involved a proper indictment or simply did not address the issue of whether a defective indictment would constitute structural error, and thus provide no support for the majority's position.  *See United States v. Mack*, 729 F.3d 594, 607 (6th Cir. 2013); *United States v. Kirklin*, 727 F.3d 711, 716 (7th Cir. 2013); *United States v. McKinley*, 732 F.3d 1291, 1295 (11th Cir. 2013).  The fourth case, *United States v. Harakaly*, 734 F.3d 88, 94 (1st Cir. 2013), concerned a guilty plea and the issue of structural error was raised only on reply, such that the court devoted only a few sentences to the analysis.  It is also worth noting that the majority here cited some of these cases to note that they had reviewed an *Alleyne* claim for plain error, perhaps under the assumption that structural errors are automatically reversible even when not timely raised, and thus not amenable to plain error review.  This is incorrect.  *Cotton* itself noted that the question of structural or harmless error is resolved at step three of the plain error review process, but decided not to answer that question because step four resolved the case.  Thus, even structural errors are reviewed for plain error if not timely raised.

[8] I note that *Stirone v. U.S.*, 361 U.S. 212, 219 (1960) found a deficient indictment to be "far too serious to be treated as

---

15

and concise summaries, *Puckett v. United States*, 556 U.S. 129, 140 (2009) outlined three factors which it used to determine whether a plea breach was a structural error: whether it (1) necessarily rendered a trial unfair or unreliable for determining guilt or innocence, (2) defied analysis by harmless-error standards by affecting the entire adjudicatory framework, and/or (3) presented difficulty in assessing the effect of the error, more than for other errors subject to harmless error review.

Factors two and three indicate that if an error can be plausibly reviewed for harmlessness, then it should be. As such, we must first determine how harmless error review of a deficient indictment would proceed, before deciding whether such a review is workable. The original formulation of harmless error in *Chapman* was "whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." 386 U.S. at 24 (internal quotation omitted). In other words, the *Chapman* harmless error standard was developed for use in the trial context, and requires a judgment that the error did not affect the jury's verdict. The majority appears to agree that this is the proper inquiry, such that any harmless error review must take into account the total effect of a defective indictment. That is, harmless error review in this context would require a court to ask whether the indictment error contributed to the petit jury verdict.

---

nothing more than a variance and then dismissed as harmless error." However, as this case preceded *Chapman* and the development of the harmless error doctrine, I cannot assume that it controls the question faced today.

16

With this in mind, we examine the three factors the *Puckett* Court cited to determine whether a deficient indictment constitutes structural error. First, there can be no doubt that a deficient indictment affects the entire adjudicatory framework, and consequently defies analysis by harmless error standards. In *Arizona v. Fulminante*, the Court listed certain structural errors that affect the entirety of trial, such as deprivation of counsel and a biased trial judge. 499 U.S. at 309. The Court noted that "[t]he entire conduct of the trial from beginning to end is obviously affected by the absence of counsel for a criminal defendant, just as it is by the presence on the bench of a judge who is not impartial. . . . Each of these constitutional deprivations is a similar structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Id.* at 309-10.

It is hard to think of a more "structural defect" than one affecting the indictment, which initiates and provides the foundation for a federal criminal trial. *See Kaley v. United States*, 134 S. Ct. 1090, 1097 (2014) ("This Court has often recognized the grand jury's singular role in finding the probable cause necessary to initiate a prosecution for a serious crime.") Prosecutors are barred from informally amending or materially varying from the indictment; it puts the defendant on notice of the charges against him, protects him from double jeopardy, and serves as the direct interposition of the public in the charging process.

Further, it is axiomatic that a trial proceeds according to the crimes as described in the indictment. The defendant will attempt to rebut the crimes alleged and impeach testimony relating to the listed elements of those crimes. He

17

would have no call to even consider whether to attack evidence with regard to any omitted element. This is especially so where, as here, the indictment alleges one complete crime, which lacks an element of an uncharged, distinct offense. From indictment to conviction, neither Lewis nor any similarly situated defendant would foresee the need to defend against such a separate offense, asserted only at the sentencing phase. In short, it is clear that a deficient indictment affects the entire framework of the trial and defies analysis by harmless error standards.

Next, we consider the related question of whether this error presents special difficulty in assessing prejudice. It clearly does. In *United States v. Gonzalez-Lopez*, the Court found that denial of counsel of one's choice constituted structural error. 548 U.S. 140 (2006). In so concluding the Court held that:

> It is impossible to know what different choices the rejected counsel would have made, and then to quantify the impact of those different choices on the outcome of the proceedings . . . . Harmless-error analysis in such a context would be a speculative inquiry into what might have occurred in an alternate universe.

*Id.* at 150. Similarly, here, assessing prejudice flowing from a faulty indictment would require sheer speculation into the possible decisions of the defendant and trial counsel if a different crime had been charged. Just as in *Gonzalez-Lopez*,

18

to determine what would have happened if a proper indictment had been entered, we would need to enter "an alternate universe."[9]

The last factor, whether a defective indictment renders a trial unfair or unreliable, requires the least analysis. In failing to put a defendant on notice of the elements of those charges against him, through a deficient indictment, the defendant is disadvantaged and has no reason to contest such omitted elements at trial. Further, enabling the prosecution or Court to change the crime charged without formal process, either at trial or sentencing, undermines any notion of fairness in an adversarial context. There can be no doubt that a material defect in the foundation of the trial necessarily renders it an unfair and unreliable vehicle for determining guilt or innocence.

In short, a defective indictment satisfies all of the criteria used to determine structural error, such that it is not reviewable for mere harmlessness. *See United States v. Inzunza*, 638 F.3d 1006, 1016-17 (9th Cir. 2011) ("A defective indictment is a structural flaw not subject to

---

[9] The majority overlooks this issue in conducting its own harmless error analysis. It examines the testimony presented at trial and concludes that a brandishing charge was sufficiently proven. In fact, a harmless error inquiry would require a showing, beyond a reasonable doubt, that brandishing would still have been proven *if* the indictment had properly alleged that crime. The inherently speculative nature of such an inquiry presents special difficulty in assessing prejudice, thus satisfying this structural error criterion.

19

harmless error review."). This conclusion stands firmly upon *Alleyne*, which held that where a brandishing charge is neither alleged in the indictment nor charged to the jury, such an error requires a remand "for resentencing consistent with the jury's verdict." 133 S. Ct. at 2164. In that case, the Court did not pause to consider the issue of harmless error. Its precedent, however, clearly dictates that where an indictment lacks the offense for which the defendant is later sentenced, structural error has occurred. I dissent from the majority's conclusion to the contrary.

## III. Conclusion

Over a decade ago in *Vazquez*, I noted that the logic in that decision would mean that the "government can charge and convict a defendant of manslaughter, but sentence him for murder, and, as long as the government produced evidence at trial that would support that sentence, we would not notice or correct the error under [plain error review] and require resentencing in accordance with the jury's verdict." 271 F.3d at 130 (Rendell, J. dissenting). Today the majority goes beyond even that dire prediction as it upholds a sentence for a crime different from that of conviction, *under de novo review*. Under the majority's reasoning, and contrary to *Alleyne*, a district court may now sentence a defendant pursuant to an improper mandatory minimum, in violation of the Sixth Amendment, and we would be obligated to uphold the sentence if we, an appellate court, find the evidence at trial to have been sufficient. In short, today's decision strikes at the very heart of the jury trial and grand jury protections afforded by the Constitution.

20

But perhaps I am wrong.  Perhaps we live in a brave new world where judges may determine what crimes a defendant has committed without regard to his indictment or jury verdict, and sentence him accordingly.  Or maybe *Alleyne* does not really mean what it says, when it proclaims brandishing and carrying offenses to be separate and distinct crimes, and that a defendant is entitled to be sentenced consistent with the jury's findings.  But I take the Supreme Court at its word.    Until clearly instructed otherwise, I maintain that different crimes are just that, and district court judges cannot sentence a defendant to an uncharged crime simply because the evidence fits, nor can an appellate panel affirm such a sentence because *they* find that the evidence fits.  I adhere to the principle that both appellate and trial judges are required by the Constitution to respect, and sentence according to, a valid jury verdict, and on this basis I respectfully dissent.