**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2931
_____

UNITED STATES OF AMERICA

v.

JERMEL LEWIS, a/k/a STAR, a/k/a PR-STAR,
a/k/a P

Jermel Lewis,

Appellant

_____

On appeal from the United States District Court
For the Eastern District of Pennsylvania
(District Court No. 2-08-cr-00161-003)
District Judge:  Honorable J. Curtis Joyner

_____

Argued on May 27, 2014 before Merits Panel
Court Ordered Rehearing En Banc on November 25, 2014
Argued En Banc on February 19, 2015

Before:  McKEE, <u>Chief Judge</u>, RENDELL, AMBRO,
FUENTES, SMITH, FISHER, CHAGARES, JORDAN,
HARDIMAN, GREENAWAY, JR., VANASKIE,
SHWARTZ and KRAUSE, <u>Circuit Judges</u>

(Opinion filed:  September 16, 2015)

Paul J. Hetznecker, Esquire  **(Argued)**
1420 Walnut Street, Suite 911
Philadelphia, PA   19102

                Counsel for Appellant Jermel Lewis


Robert A. Zauzmer, Esquire **(Argued)**
Arlene D. Fisk, Esquire
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA   19106

                Counsel for Appellee United States of
                America


Michael P. Addis, Esquire **(Argued)**
J. Wesley Earnhardt, Esquire
Cravath, Swaine & Moore
825 Eighth Avenue
Worldwide Plaza
New York, NY   10019

                Counsel for Amicus Amachi, Inc.

## OPINION

**RENDELL,** <u>Circuit Judge</u>:

Jermel Lewis was sentenced for a crime with a seven-year mandatory minimum—brandishing a firearm during and in relation to a crime of violence—notwithstanding the fact that a jury had not convicted him of that crime. Instead, he had been convicted of the crime of using or carrying a firearm during and in relation to a crime of violence, which has a five-year mandatory minimum. Lewis was never even indicted for the crime of brandishing. In *Alleyne v. United States*, the Supreme Court held that this scenario, i.e., sentencing a defendant for an aggravated crime when he was indicted and tried only for a lesser crime, violates a defendant's Sixth Amendment right to a jury trial. 133 S. Ct. 2151, 2163-64 (2013). Even though that constitutional issue is settled, we still must address the issue of whether the error that transpired in this case was harmless. We conclude that the error was not harmless because it contributed to the sentence Lewis received. Accordingly, we will vacate Lewis's sentence and remand for resentencing.

## I. Background

Lewis and his codefendants Glorious Shavers and Andrew White (collectively, "Defendants") committed an armed robbery of an unlicensed after-hours "speakeasy" in North Philadelphia on November 8, 2005. Shavers and White were charged on March 20, 2008, with robbery in violation

3

of the Hobbs Act, 18 U.S.C. § 1951(a), and with using or carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). On July 10, 2008, a superseding indictment charged Lewis with the same offenses and added attempted witness tampering charges under 18 U.S.C. § 1512(b)(1) against all Defendants. On August 20, 2009, a second superseding indictment added further witness tampering charges and a count of conspiracy to commit robbery against all Defendants. Count three of the second superseding indictment—the only count at issue here—charged that Defendants "knowingly used and carried, and aided and abetted the use and carrying of, a firearm . . . during and in relation to a crime of violence." (App. 71.) The indictment did not include a count for brandishing a firearm.

Defendants were tried in the District Court for the Eastern District of Pennsylvania beginning on September 9, 2009. The District Court instructed the jury that Lewis was charged with "using and carrying a firearm during the crime of violence"; it did not instruct the jury on a brandishing offense.[1] (App. 2019.) The jury found all Defendants guilty of using or carrying a firearm and the Hobbs Act violations, but Lewis was acquitted of the witness tampering charges. Lewis was ultimately sentenced to a term of 132 months' incarceration to be followed by five years of supervised release. The 132 months consisted of 48 months' incarceration on each of the two Hobbs Act counts, to run concurrently, and 84 months' incarceration, the mandatory

---

[1] At trial, two victims of the robbery testified that the robbers threatened them with firearms; their testimony was consistent with the statutory definition of "brandishing."

4

minimum term of imprisonment for brandishing a firearm, to run consecutively. Lewis timely objected to being sentenced for brandishing a firearm because the jury found only that he had used or carried.

Section 924(c)(1)(A) imposes differing mandatory minimum sentences depending upon whether the defendant "uses or carries," "brandishe[s]," or "discharge[s]" a firearm during and in relation to a crime of violence or drug trafficking crime. These are three "separate, aggravated offense[s]." *Alleyne*, 133 S. Ct. at 2162. Indeed, they are in separate subparts of § 924(c)(1)(A). *Compare* 18 U.S.C. § 924(c)(1)(A)(i) (uses or carries), *with id.* § 924(c)(1)(A)(ii) (brandishes), *with id.* § 924(c)(1)(A)(iii) (discharges). Because Lewis was charged with and convicted of the "uses or carries" offense, but sentenced for the "brandishes" offense, he was sentenced for a crime for which he was neither charged nor convicted.

Following sentencing, Defendants raised various issues on appeal. Relevant here, we affirmed Lewis's sentence. *United States v. Shavers*, 693 F.3d 363, 397 (3d Cir. 2012). The Supreme Court granted Defendants' petition for a writ of certiorari, vacated our judgment, and remanded for further consideration in light of its decision in *Alleyne*, which had been decided after our ruling. *See Shavers v. United States*, 133 S. Ct. 2877 (2013).

On remand, the Government continued to oppose Lewis's *Alleyne* argument, urging that the error was harmless. On September 9, 2014, a divided panel of this Court affirmed, holding, "in light of the overwhelming and uncontroverted evidence in support of the brandishing element that, had the

5

jury been properly instructed on that element, it would have found that element beyond a reasonable doubt," and "[a]ny resulting error was therefore harmless." *United States v. Lewis*, 766 F.3d 255, 271 (3d Cir. 2014) (internal quotation marks omitted). On November 25, 2014, we vacated the panel opinion and subsequently reconsidered this appeal en banc.

## II.  Jurisdiction and Standard of Review

We have jurisdiction pursuant to 28 U.S.C. § 1291. Allegations of constitutional error at sentencing are subject to plenary review. *United States v. Barbosa*, 271 F.3d 438, 452 (3d Cir. 2001).

## III.  Discussion

The parties do not agree on the framework that we should apply to this appeal. Lewis urges that his *Alleyne* error constitutes one of the following: a structural error, a constructive amendment to the indictment, a presumptively prejudicial error, or a pure sentencing error under harmless-error review. The Government, conceding that there was an *Alleyne* error, urges us to apply harmless-error review, but would have us examine the trial record in addition to the sentence. Because we will vacate based upon harmless-error review, which is the standard less favorable to Lewis, we need not address Lewis's other arguments. We need address only whether the error was a sentencing error or a trial error and then apply the appropriate standard, which in our case is the standard for sentencing errors. We note, accordingly, that we do not opine as to the applicability of the alternative

standards more favorable to Lewis, the choice of which would present particularly thorny issues of law.[2]

We begin by considering the Supreme Court's opinion in *Alleyne*, which held that brandishing a firearm was a separate, aggravated offense from using or carrying a firearm, and that the aggravated offense must be found by a jury beyond a reasonable doubt. We will then discuss the appropriate remedy here, in light of the Government's argument that the error was harmless.

A. *Alleyne*

The similarities between *Alleyne* and Lewis's case are noteworthy. Both Alleyne and Lewis were charged with using or carrying a firearm. *Alleyne*, 133 S. Ct. at 2155. Each jury considered only whether Alleyne or Lewis had used or carried a firearm, not whether they had brandished one. *Id.* at 2156. Both Alleyne and Lewis were convicted of using or

---

[2] Our concurring colleagues assert that the failure to inform Lewis of the charge of brandishing in the indictment renders the error structural. We are not so sure. The indictment is not the focus of Lewis's argument; he seeks resentencing, not a new indictment and retrial based on his having brandished the weapon. The indictment and trial for gun possession did not violate his rights; his sentencing for a crime with a greater mandatory minimum did. Given that no court has held that an *Apprendi* or *Alleyne* error is structural, we would be taking a bold step if we were to rule that the error here infected the entire trial process. However, we need not decide this issue as the error here was certainly not harmless, and resentencing is, as the concurrence concedes, the appropriate remedy.

carrying. *Id.* Both Alleyne's and Lewis's presentence report recommended a seven-year sentence on the firearm count, in accordance with the mandatory minimum for brandishing. *Id.* Both Alleyne and Lewis timely objected and contended that their Sixth Amendment right to a jury trial had been violated because they were convicted of an offense with a five-year mandatory minimum, but sentenced as if they had been convicted of one with a seven-year mandatory minimum. *Id.* Both district courts overruled the objection because *Harris v. United States*, 536 U.S. 545 (2002), foreclosed the argument.[3] *Alleyne*, 133 S. Ct. at 2156.

In *Alleyne*, the Supreme Court held that if a defendant is convicted of using or carrying a firearm during and in relation to a crime of violence, but is instead sentenced for brandishing a firearm, the defendant's Sixth Amendment right to be tried by a jury for the crime of brandishing a firearm has been violated. *Id.* at 2163-64. The Supreme Court overruled *Harris* and held that brandishing a firearm is a "separate, aggravated offense that must be found by the jury." *Id.* at 2162. The *Alleyne* Court thus "vacate[d] the Fourth Circuit's judgment with respect to Alleyne's sentence on the § 924(c)(1)(A) conviction and remand[ed] the case for resentencing consistent with the jury's verdict." *Id.* at 2164.

The Supreme Court's reasoning in *Alleyne* is based on earlier Supreme Court precedent, *Apprendi v. New Jersey*,

---

[3] *Harris* had held that it did not violate the Fifth or Sixth Amendment for a judge to make a judicial finding by a preponderance of the evidence that a defendant had brandished a firearm, thereby increasing the defendant's mandatory minimum. 536 U.S. at 567-68.

530 U.S. 466, 490 (2000), in which it determined that a jury must generally find facts that increase the penalty for a crime beyond the mandatory maximum. In *Alleyne*, the Supreme Court concluded that the *Apprendi* rule for mandatory maximums also applies when the mandatory minimum is increased, as is the case for a brandishing charge; indeed, *Alleyne* is the logical extension of *Apprendi*. *See Alleyne*, 133 S. Ct. at 2163 ("[T]here is no basis in principle or logic to distinguish facts that raise the maximum from those that increase the minimum . . . ."). While an *Apprendi* error occurs when a judge, rather than a jury, finds a fact that increases the mandatory maximum, an *Alleyne* error occurs when a judge, rather than a jury, finds a fact that increases the mandatory minimum for a defendant. In both *Apprendi* and *Alleyne*, the Supreme Court thus confirmed the fundamental right of a criminal defendant to have the jury, not the judge, find such facts.

### B. Harmless Error

*Alleyne* thus establishes that when a defendant is sentenced for brandishing but indicted, tried, and convicted of using or carrying, the defendant's constitutional rights have been violated. The Government urges, however, that this error can be harmless and correctly points out that the issue of harmless error was neither raised nor discussed in *Alleyne*. The Government also notes that the Supreme Court has "adopted the general rule that a constitutional error does not automatically require reversal of a conviction," as "the Court has applied harmless-error analysis to a wide range of errors and has recognized that most constitutional errors can be harmless." *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991). Accordingly, we turn now to the issue of harmlessness.

9

The rule governing harmless error provides: "Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Fed. R. Crim. P. 52(a). For harmless-error review, "the over-arching consideration of Rule 52 is whether an error 'affects substantial rights.'" *United States v. Adams*, 252 F.3d 276, 281 (3d Cir. 2001). Harmless-error review "applies when the defendant has made a timely objection to an error," as Lewis has in this case.[4] *Id.* "Though the harmless error analysis leaves room for certain convictions to stand, regardless of the presence of constitutional error at trial, it places a decidedly heavy burden on the Government to demonstrate that reversal is not warranted." *United States v. Waller*, 654 F.3d 430, 438 (3d Cir. 2011).

To begin, we note two different types of errors that we routinely review on appeal in a criminal case: trial errors and sentencing errors. *See, e.g.*, *United States v. Brennan*, 326 F.3d 176, 180 (3d Cir. 2003). We must determine into which category Lewis's *Alleyne* error falls.

The error here was a sentencing error, as nothing was wrong with Lewis's indictment or trial. The indictment charged Lewis with an offense—using or carrying—and did not omit any elements of that charge. At trial, the jury received the proper instructions for the using or carrying offense. The jury properly entered a verdict finding Lewis guilty of that offense, so Lewis was properly convicted of that offense. But, then, the District Court sentenced Lewis for the offense of brandishing. As in *Alleyne*, this was the error. *See*

---

[4] Otherwise, plain-error review applies. *See* Fed. R. Crim. P. 52(b).

*United States v. Pizarro*, 772 F.3d 284, 294 (1st Cir. 2014) ("In *Alleyne* itself, the error was of the sentencing variety."). We are not alone in reaching this conclusion, as the Courts of Appeals for both the Fourth and Ninth Circuits have treated particular *Apprendi* errors as sentencing errors. *See, e.g.*, *United States v. Mackins*, 315 F.3d 399, 409-10 (4th Cir. 2003); *United States v. Jordan*, 291 F.3d 1091, 1095-97 (9th Cir. 2002).[5]

This is not to say that all *Alleyne* or *Apprendi* errors are pure sentencing errors. In *United States v. Vazquez*, 271 F.3d 93 (3d Cir. 2001) (en banc), we were confronted with both a trial error and a resulting sentencing error. We noted in *Vazquez* that, for the particular *Apprendi* error in that case, "the sentencing error (imposing a sentence beyond the prescribed statutory maximum) is inextricably intertwined with a trial error (failing to submit an element of the offense to the jury)." *Id.* at 101. The jury in *Vazquez* was never instructed on one of the elements of the offense, i.e., drug quantity, for which the defendant was indicted, tried, and

---

[5] We recognize that the Court of Appeals for the Ninth Circuit has not applied *Jordan* consistently. *Compare Jordan*, 291 F.3d at 1097 ("We hold that the government cannot meet its burden under the harmless error standard when drug quantity is neither charged in the indictment nor proved to a jury beyond reasonable doubt, if the sentence received is greater than the combined maximum sentences for the indeterminate quantity offenses charged."), *with United States v. Salazar-Lopez*, 506 F.3d 748, 754-55 (9th Cir. 2007) (purporting to apply *Jordan* but considering whether the evidence was "overwhelming and uncontroverted").

convicted—namely, conspiracy to possess and distribute more than five kilograms of cocaine. *See id.* at 98 ("Vazquez was indicted and tried for conspiracy to possess and distribute more than 5 kilograms of cocaine . . . . [D]rug quantity was neither submitted to the jury nor reflected in its verdict."). Thus, *Vazquez* involved a clear trial error: "failing to submit to the jury an element of an offense" for which the defendant was indicted and convicted. *Id.* at 102. Here, in contrast, the jury instructions discussed all the elements of the crime for which Lewis was indicted and convicted—i.e., using or carrying. The District Court could have sentenced Lewis for using or carrying, as the jury found every element of that crime. But it sentenced him for a different crime. Thus, this case, like *Alleyne*, involves a pure sentencing error, whereas *Vazquez* involved a trial error.[6]

---

[6] This case is materially distinguishable from *Neder*, *Johnson*, and *Vazquez*. In those three cases, the defendants were charged with the sentenced crime, but the jury was not instructed to find one of the elements of that crime. *See, e.g.*, *Neder v. United States*, 527 U.S. 1, 14 (1999) ("The trial court, following existing law, ruled that the question of materiality was for the court, not the jury."); *Johnson v. United States*, 520 U.S. 461, 464 (1997) ("[T]he District Judge instructed the jury that the element of materiality was a question for the judge to decide, and that he had determined that her statements were material."); *Vazquez*, 271 F.3d at 98 ("Vazquez was indicted and tried for conspiracy to possess and distribute more than 5 kilograms of cocaine in violation of 21 U.S.C. §§ 846 and 841. . . . In Vazquez's case, drug quantity was neither submitted to the jury nor reflected in its verdict."). To the extent that the concurrence and the dissent rely on those cases in concluding that the error here was a

Harmless-error review for a sentencing error turns on whether the error did or did not "contribute to the [sentence] obtained." *Sochor v. Florida*, 504 U.S. 527, 539 (1992) (alteration in original) (quoting *Chapman v. California*, 389 U.S. 18, 24 (1967)).  In other words, harmless-error review for a sentencing error requires a determination of whether the error "would have made no difference to the sentence." *Parker v. Dugger*, 498 U.S. 308, 319 (1991).  This analysis contrasts with the analysis appropriate for trial errors, which turns on whether it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Neder v. United States*, 527 U.S. 1, 18 (1999). Because we are confronted here with a sentencing error, we do not conduct the analysis reserved for trial errors.

There is a further reason that compels our rejection of the Government's assertion that we should look back to the trial record in assessing harmless error when the mandatory maximum or minimum is at play.  Looking back to the trial record would run directly contrary to the essence of *Apprendi* and *Alleyne*.  The motivating principle behind *Apprendi* and *Alleyne* is that judges must not decide facts that change the mandatory maximum or minimum; juries must do so.  If we affirm because the evidence is overwhelming, then we are performing the very task that *Apprendi* and *Alleyne* instruct judges not to perform.  *See, e.g.*, *Alleyne*, 133 S. Ct. at 2155 ("Any fact that, by law, increases the penalty for a crime . . . must be submitted to the jury and found beyond a reasonable

---

trial error, those cases do not support that position.  They do not address the situation where, as here, the defendant was sentenced for a crime for which he was *neither indicted nor tried*.

doubt."); *id.* at 2162 ("When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact . . . must be submitted to the jury."); *id.* ("Indeed, if a judge were to find a fact that increased the statutory maximum sentence, such a finding would violate the Sixth Amendment . . . ."); *Apprendi*, 530 U.S. at 490 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.").[7]

The Government relies heavily on *United States v. Cotton*, 535 U.S. 625 (2002), and *Washington v. Recuenco*, 548 U.S. 212 (2006), in urging us to conduct the harmlessness inquiry reserved for trial errors and to examine the nature and quantum of the evidence introduced at trial in order to uphold the sentence. However, these cases are distinguishable and do not advance the Government's position. In *Cotton*, the Supreme Court decided that an *Apprendi* error does not require reversal under *plain-error* review when the evidence that the defendant committed the offense at issue was overwhelming and uncontroverted. *Cotton*, 535 U.S. at 633.

---

[7] We also note the Kafkaesque consequence of the Government's position, which was made starkly apparent at oral argument: the Government conceded that "the logical outcome of [its] position" that judges should consider the evidence in the trial record is that, if a defendant were charged and convicted of manslaughter, but the judge were to find evidence of premeditation to be overwhelming and uncontroverted, a sentence for the aggravated offense of murder would be permissible. (Oral Arg. 51:20, Feb. 19, 2015.)

14

*Cotton* and Lewis's case bear certain similarities—in each case, the indictment, the jury instructions, and the conviction all supported a lesser offense, yet the judge at sentencing subjected the defendant to the sentencing range applicable for an aggravated offense. *See id.* at 627-29. It follows that *Cotton*, like Lewis's case, involves a pure sentencing error. But *Cotton* involved *plain error* because the defendant failed to timely object to the error, *id.* at 634, not harmless error as is the case here. The crucial consideration in *Cotton* was that, because the evidence at trial was overwhelming and uncontroverted, "the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings."[8] *Id.* at 632-33. Here, because Lewis's case does not involve review for plain error, the issue of whether the error seriously affects the fairness, integrity, or public reputation of judicial proceedings is not before us. *See Johnson v. United States*, 520 U.S. 461, 466-67 (1997) (noting that this is a question for *plain-error* review); *see also Jordan*, 291 F.3d at 1096 n.7 (holding that *Cotton* "does not control nor aid our analysis" because "that case was analyzed under plain error, not harmless error"); *Mackins*, 315 F.3d at 409 (distinguishing *Cotton* because the integrity of judicial proceedings step of plain-error review "has no application when a defendant has objected in the trial court and so preserved his contention for appellate review").[9]

---

[8] Crucially, the *Cotton* Court did not address whether the presence of overwhelming and uncontroverted evidence at trial was a consideration for the "substantial rights" stage of the plain-error inquiry. 535 U.S. at 632.

[9] We do not find the Court for Appeals for the Second Circuit's opinion in *United States v. Confredo* persuasive

15

Accordingly, *Cotton* does not dictate the analysis or result here.

*Recuenco* is also off-point. In *Recuenco*, a jury found that the defendant had committed an assault with a "deadly weapon." *Recuenco*, 548 U.S. at 215. The judge sentenced the defendant pursuant to an enhancement for using a "firearm," which is a type of "deadly weapon." *Id.* However, the problem was that the jury did not specifically find that the defendant committed an assault with a "firearm," just that he had committed an assault with a "deadly weapon." *Id.* The Supreme Court held that the "[f]ailure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error." *Id.* at 222. Importantly, at no point did the Supreme Court explain what harmless-error review should consist of. Instead, it merely "remand[ed] the case for further proceedings not inconsistent with [its] opinion." *Id.* Thus, *Recuenco* provides no support for the Government's assertion that we should consider the evidence in the trial record here.[10]

_____

because it fails to recognize this distinction. *See* 528 F.3d 143, 156 (2d Cir. 2008) ("The Supreme Court has ruled [in *Cotton*] that an *Apprendi* violation concerning an omission from an indictment is not noticeable as plain error where the evidence is overwhelming that the grand jury would have found the fact at issue. We think the same analysis should apply to harmless error." (citation omitted)).

[10] Both the concurrence and the dissent struggle unnecessarily and incorrectly with the test for harmlessness. The dissent's inquiry into the evidence is wrongheaded, as the error occurred at sentencing, and thus, the Government must prove that the sentence would have been no different had the error not occurred. *Cotton*'s concern with the integrity of judicial

16

Here, we are presented with a pure sentencing error and thus must ask whether the *Alleyne* error in this case contributed to Lewis's sentence. As we explained *supra*, this inquiry takes the form of asking whether Lewis's sentence would have been different had he been sentenced for using or carrying, rather than brandishing. *See Parker*, 498 U.S. at 319 (explaining the inquiry as whether the error "would have made no difference to the sentence"). Obviously, Lewis's sentence would have been different: Lewis received 84 months for brandishing—the seven-year mandatory minimum—whereas the mandatory minimum for using or carrying is two years less. Therefore, Lewis has been sentenced to an extra two years as a result of this *Alleyne* error. The Government bears the "decidedly heavy burden" as to harmlessness, *see Waller*, 654 F.3d at 438, and it does not and cannot contend that it "would have made no difference to the sentence" if Lewis had been sentenced for using or carrying, instead of for brandishing.[11]

---

proceedings and its resulting consideration of the evidence has no place here: the integrity of judicial proceedings is the last prong of the plain-error test, and it is absent from the harmless-error test. The concurrence proceeds from the vantage point of the purportedly defective indictment. This, too, is flawed. Nothing was wrong with Lewis's indictment: the error was in sentencing Lewis using the mandatory minimum applicable to a crime more serious than the crime of conviction.

[11] There may be a case where the sentencing court makes it clear that it is not sentencing the defendant based on the mandatory minimum. In such a case, we could conclude that the *Alleyne* error did not impact the sentence. *See United States v. Langford*, 516 F.3d 205, 215 (3d Cir. 2008) ("For

## IV. Conclusion

For the foregoing reasons, we will vacate the District Court's sentence and remand for resentencing.

---

the error to be harmless, it must be clear that the error did not affect the district court's selection of the sentence imposed."). If the Government meets its heavy burden to show that the error would have made no difference to the sentence—i.e., had the defendant been sentenced for the crime for which he was convicted, his sentence would have been the same—then we may affirm under harmless-error review. However, we would remand for resentencing unless we are certain that the error made no difference to the sentence.

*United States v. Lewis*, No. 10-2931

SMITH, *Circuit Judge*, concurring, joined by McKEE, *Chief Judge*, AMBRO and JORDAN, *Circuit Judges*.

　　Jermel Lewis was charged with and convicted of using or carrying a firearm, but was eventually sentenced on the basis of a different, aggravated crime. Conviction of the aggravated crime would have required proof of an element unnecessary to a using or carrying offense: that Lewis had brandished a firearm. Lewis's indictment did not charge him with brandishing, nor did the jury find that he had committed that crime beyond a reasonable doubt. Yet Lewis was subjected to the enhanced mandatory minimum sentence required for brandishing. I agree with the majority that this error demands resentencing; the new sentence should be based solely on the crime with which Lewis was actually charged and for which he was convicted. But I would hold that this error was structural and therefore reversible if properly preserved. Structural errors do not require a court to inquire into whether the error was harmless.

## I.

　　Analysis of the nature of the error here begins with determining whether sentencing a defendant for an uncharged crime is a "pure sentencing error" as the majority describes it, or instead is an error that is inextricable from the contours of the indictment. Our previous en banc decision in *United States v. Vazquez*, 271 F.3d 93 (3d Cir. 2001), provides the lens through which the error in this case must be viewed. There we considered a violation of *Apprendi v. New Jersey*,

1

530 U.S. 466 (2000), in which the defendant was charged and tried for conspiracy to possess and distribute more than five kilograms of cocaine, a quantity sufficient to warrant an enhanced sentence. *Vazquez*, 271 F.3d at 98. But the jury was not asked to find drug quantity. *Id.* Nevertheless, the district court sentenced the defendant to 292 months' incarceration—over four years more than the applicable statutory maximum for a conviction without quantity—after finding by a preponderance that the defendant had been "involved with"[1] nearly two kilograms of cocaine. *Id.* at 98–99. While the case was on direct appeal, the Supreme Court decided *Apprendi*. *Id.* at 99. Applying *Apprendi* retroactively, we said the failure to submit drug quantity to the jury yet imposing an enhanced sentence for quantity was "not just a sentencing error but also a trial error" because

> the sentencing error (imposing a sentence beyond the prescribed statutory maximum) is inextricably intertwined with a trial error (failing to submit an element of the offense to the jury). On the one hand, the trial error exists only because of the sentencing error. On the other hand, the sentencing error cannot occur without the trial error.

*Id.* at 101. Thus, we chose not to view the error in *Vazquez* as a pure sentencing error because "the realities concerning the nature of *Apprendi* violations" required a different result. *Id.*

---

[1] The evidence at trial showed that the defendant had given 991 grams of powder cocaine and 859 grams of crack cocaine to a co-conspirator for storage. *Vazquez*, 271 F.3d at 97.

This was also "more consonant" with the approaches taken in *Neder v. United States*, 527 U.S. 1 (1999), and *Johnson v. United States*, 520 U.S. 461 (1997). *Vazquez*, 271 F.3d at 102. Both *Neder* and *Johnson* involved the trial court's failure to submit a required element of a defendant's conviction to the jury.[2] *Neder*, 527 U.S. at 18–19; *Johnson*, 520 U.S. at 470. We reasoned that because the errors in *Neder* and *Johnson* were "trial error[s] result[ing] in a constitutional defect," the failure to submit an element to the jury resulting in a sentence violating *Apprendi* must also constitute both trial and sentencing error. *Vazquez*, 271 F.3d at 102.

A similar series of events tainted the proceedings here. The indictment charged Lewis with using and carrying a firearm, and the District Court properly instructed the jury as to that charge. Yet the District Court applied the enhanced mandatory minimum for brandishing. The omission of brandishing from the jury instructions and the resulting error in sentencing for brandishing stemmed from the Government's decision not to charge brandishing in the indictment. Similarly, the indictment was lacking only because the District Court sentenced Lewis for brandishing. Although prosecutorial discretion permitted the Government to charge Lewis for a less significant crime than the evidence might support, *see United States v. Esposito*, 968 F.2d 300, 306 (3d Cir. 1992) ("In our criminal justice system, if the prosecutor has probable cause to believe a crime has been committed and that the accused committed it, the decision

---

[2] Notably, neither *Neder* nor *Johnson* involved indictment omissions.

3

whether or not to prosecute and what charges to file generally rests within the prosecutor's broad discretion."), the Government's decision not to charge brandishing gained constitutional significance when the District Court sentenced Lewis for the uncharged brandishing offense.

The majority concludes that "[t]he error here was a sentencing error, as nothing was wrong with Lewis's indictment or trial." But the same could have been said in *Vazquez*: The instructions to the jury were sufficient to support a conviction and sentence for a lesser-included offense that did not require proof of drug quantity, and the sentencing court erred by imposing a sentence greater than that reflected in the instructions. Indeed, we characterized the sequence of events in *Vazquez* as a combined "trial and sentencing error" despite there being nothing incorrect about instructing the jury and securing a conviction on a lesser-included offense, as opposed to the aggravated crime charged in the indictment. *See Schmuck v. United States*, 489 U.S. 705, 717 (1989) (Rule 31(c) of the Federal Rules of Criminal Procedure "suggests that a lesser included offense instruction is available in equal measure to the defense and to the prosecution"); *Keeble v. United States*, 412 U.S. 205, 208 (1973) ("[T]he defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater."); *see also United States v. Petersen*, 622 F.3d 196, 207 (3d Cir. 2010) (affirming conviction for lesser-included offense under plain-error review where jury was instructed only as to aggravated offense). Accordingly, that the indictment here was initially error-free does not control whether we must nevertheless consider the charges Lewis

4

faced to assess the implications of his erroneous sentence for brandishing.

Indeed, as in *Vazquez*, the realities of the *Alleyne* error here support the view that the District Court's error was not limited merely to sentencing. The Government from the outset alleged facts consistent with brandishing. The second superseding indictment described Lewis's and his co-defendants' overt acts in relation to the Government's conspiracy count as follows:

> Defendants Glorious Shavers, Andrew White, and Jermel Lewis burst through the front door of the Speakeasy armed with handguns and a shotgun, announced a robbery, forced customers and employees to the floor, threatened to shoot them, herded the victims into the basement and again forced them onto the floor, and stole money, wallets and cell phones.

This allegation was incorporated by reference into the count charging Lewis under 18 U.S.C. § 924(c) and 18 U.S.C. § 2. But that count charged Lewis only with "knowingly us[ing] and carr[ying], and aid[ing] and abett[ing] the use and carrying of, a firearm." The Government's decision not to charge Lewis with brandishing under 18 U.S.C. § 924(c)(1)(A)(ii), despite alleging conduct clearly consistent with brandishing in the operative count, transformed what would have been a proper sentence for brandishing into constitutional error.

5

The Government's prosecution of this case may be understandable given that this case was charged, tried, and sentenced while *Harris v. United States*, 536 U.S. 545 (2002), was still good law. Until overruled by *Alleyne v. United States*, 133 S. Ct. 2151 (2013), *Harris* approved seeking an enhanced sentence for brandishing without submitting that element to the jury given that only a mandatory minimum was affected. *See Harris*, 536 U.S. at 556. Nevertheless, submitting an essential element affecting the applicable mandatory minimum only to the court at sentencing is impermissible after *Alleyne*.[3] And because the sentencing error of which Lewis complains exists only because of the Government's decision not to charge brandishing in the indictment, we should consider the proceeding as a whole, from the indictment through sentencing, to determine whether the error was structural.

## II.

The Supreme Court has taken a categorical approach in distinguishing structural errors from those errors subject to review for harmlessness. Most constitutional errors can be harmless, *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991), but if an error is structural, it is "*per se* prejudicial" and "lead[s] to [an] automatic reversal" if properly preserved.[4]

---

[3] Similarly, only after *Apprendi* did it become clear that the sentence in *Vazquez* was erroneous.

[4] If the error was not properly preserved, under plain-error review we may affirm a judgment even if there is a structural error that affects substantial rights. *See United States v. Cotton*, 535 U.S. 625, 632 (2002) (declining to resolve

*Vazquez*, 271 F.3d at 103. Several factors inform whether an error is structural. Structural errors "necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Puckett*, 556 U.S. at 141 (quoting *Neder*, 527 U.S. at 9). They also "'defy analysis by harmless-error standards' because they 'affec[t] the framework within which the trial proceeds,' and are not 'simply an error in the trial process itself.'" *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148–49 (2006) (alteration in original) (internal quotation marks omitted) (quoting *Fulminante*, 499 U.S. at 309–10). Thus, an error "with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as 'structural error.'" *Id.* at 150 (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 282 (1993)). Errors can also be structural if harmlessness is irrelevant to the right violated, as in the case of denials of the right to self-representation. *Id.* at 149 n.4 (citing *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984)).

Few errors are more significant to the proceedings that follow than an indictment that fails to inform a defendant of

whether omission of drug quantity from indictment was structural but affirming conviction on plain-error review); *Johnson v. United States*, 520 U.S. 461, 468–69 (1997) (declining to resolve whether omission of element from jury instructions was structural but affirming conviction on plain-error review). However, the Supreme Court has not yet resolved whether a structural error automatically affects the defendant's substantial rights for the purposes of that review. *Puckett v. United States*, 556 U.S. 129, 140 (2009); *see also United States v. Olano*, 507 U.S. 725, 735 (1993).

the charges against him and the possible punishment he faces. The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. Accordingly, a defendant has the "substantial right to be tried only on charges presented in an indictment returned by a grand jury." *Stirone v. United States*, 361 U.S. 212 (1960). This guarantee is "a basic right of criminal defendants." *United States v. Syme*, 276 F.3d 131, 154 (3d Cir. 2002). Thus, "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him." *United States v. Vosburgh*, 602 F.3d 512, 531 (3d Cir. 2010); *see also Dunn v. United States*, 442 U.S. 100, 106 (1979) ("To uphold a conviction on a charge that was neither alleged in an indictment nor presented to a jury at trial offends most basic notions of due process.").

The Sixth Amendment also provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." U.S. Const. amend. VI. This right is violated when an indictment "does not state the essential elements of the crime." *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000) (citing *Russell v. United States*, 369 U.S. 749, 761 (1962)). "A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense—a right to his day in court—are basic in our system of jurisprudence." *In re Oliver*, 333 U.S. 257, 273 (1948). Prosecuting a defendant for an aggravated crime when the indictment charges only a lesser crime thus violates both the Fifth and Sixth Amendments. *See Apprendi*, 530 U.S. at 476 ("[U]nder the Due Process Clause of the Fifth Amendment and the notice

and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." (quoting *Jones v. United States*, 526 U.S. 227, 243 n.6 (1999))); *see also Alleyne*, 133 S. Ct. at 2157 (facts that aggravate "the prescribed range of sentences to which a defendant is exposed" are "elements and must be submitted to the jury and found beyond a reasonable doubt").

Sentencing a defendant for a crime that was not charged in the indictment renders the criminal proceedings fundamentally unfair. An indictment that charges a different crime than the one for which a defendant is sentenced does not merely affect the criminal proceeding, it fundamentally alters that proceeding. Put another way, the charging instrument *is* "the framework within which the trial proceeds," *Gonzalez-Lopez*, 548 U.S. at 148 (quoting *Fulminante*, 499 U.S. at 148), and forms the basis for the Government's proof, the accused's defense, and the trial court's rulings. Indeed, whether a defendant decides to plead guilty or instead exercises his right to trial by jury may depend on the charges he faces and his potential punishment. Thus, failing to notify a defendant of the crime of which he is accused "infect[s] the entire trial process," *Neder*, 527 U.S. at 8 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 630 (1993)), and undermines any confidence that the sentence imposed reflects a just outcome.

Further, inquiry into whether an error of this nature was harmless is inherently unreliable. *See Gonzalez-Lopez*, 548 U.S. at 149 n.4 (holding error was structural because of

9

"the difficulty of assessing the effect of the error").  Would Lewis have pled guilty if he had known of the applicable mandatory minimum for brandishing, in hopes that his acceptance of responsibility would result in leniency at sentencing on the Hobbs Act counts?  Or perhaps he would have chosen to cooperate with law enforcement against his co-conspirators to gain the Government's support for a sentence below the mandatory minimum, pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e).  Would he have been successful in these efforts to reduce his sentence if he had undertaken them?  Assuming Lewis still chose to go to trial, how would his defense have changed?  Would he have sought to develop evidence rebutting a charge of brandishing?  What would that evidence have been?  What if Lewis's counsel chose not to attack the Government's proof that Lewis used or carried a firearm, but would have put on a case against weak proof of brandishing?  How might the Government's or Lewis's counsel's presentations of the case changed?  Would witnesses have changed their testimony in response to questions probing brandishing?  Would these differences have impacted the jury?  All parties to a criminal proceeding, including the judge, the jury, the defendant, defense counsel, witnesses, and prosecutors, are guided by the charges in the indictment.  And if that indictment charges a crime different than the one for which a defendant is sentenced, determining "what might have been" is an exercise in rank speculation.

In my view, the Supreme Court's rationale in *United States v. Gonzalez-Lopez* dictates the outcome here.  There, the Supreme Court held that the violation of a defendant's Sixth Amendment right to counsel of choice was structural

10

error. *Gonzalez-Lopez*, 548 U.S. at 150. In doing so, the Supreme Court observed that a different attorney might have pursued "different strategies with regard to investigation and discovery, development of the theory of defense, selection of the jury, presentation of the witnesses, and style of witness examination and jury argument." *Id.* at 150. Further, the choice of attorney "affects[s] whether and on what terms the defendant cooperates with the prosecution, plea bargains, or decides instead to go to trial." *Id.* Thus, "[i]t is impossible to know what different choices the rejected counsel would have made, and then to quantify the impact of those different choices on the outcome of the proceedings." *Id.* So too when an indictment charges a lesser crime than the one for which a defendant is eventually sentenced. Assessing the effects of the flawed indictment here is "a speculative inquiry into what might have occurred in an alternate universe" and is a far cry from the "quantitative[] assess[ment] in the context of other evidence presented" that defines harmless-error analysis. *Id.* at 148, 150 (quoting *Fulminante*, 499 U.S. at 307–08).

In an effort to demonstrate that the error here was not harmless, the majority also distinguishes the Supreme Court precedent on which the Government relies, including *United States v. Cotton*, 535 U.S. 625 (2002), and *Washington v. Recuenco*, 548 U.S. 212 (2006). As the majority correctly notes, *Cotton* involved plain error and did not address whether the type of error here was structural. *See* 535 U.S. at 632–33 (declining to resolve "whether respondents satisfy [the substantial rights] element of the plain-error inquiry").[5]

---

[5] The majority also suggests that "*Cotton*, like Lewis's case, involves a pure sentencing error." But *Cotton* did not opine

11

Further, apart from the majority's analysis, *Recuenco* is not applicable because the Supreme Court expressly declined to consider whether an error under *Blakely v. Washington*, 542 U.S. 212 (2004),[6] in the charging instrument was structural error. *See Recuenco*, 548 U.S. at 220 n.3 (noting that defendant sought to "characteriz[e] this as a case of charging error, rather than of judicial factfinding" but rejecting that distinction "[b]ecause the Supreme Court of Washington treated the error as one of the latter type"); *id.* at 223 (Stevens, J., dissenting) ("[B]ecause the Court does not address the strongest argument in respondent's favor— namely, that *Blakely* errors are structural because they deprive criminal defendants of sufficient notice regarding the charges they must defend against, this decision will have a limited impact on other cases." (citation omitted)). Indeed, after *Recuenco*, the Supreme Court granted certiorari on the very question presented in this case, but resolved that case on alternative grounds. *United States v. Resendiz-Ponce*, 549 U.S. 102, 103–04 (2007) (granting certiorari "to answer the question whether the omission of an element of a criminal

on whether it is a pure sentencing error or instead something more when a defendant is sentenced for an aggravated crime but the indictment, jury instructions, and conviction support only a lesser offense.

[6] *Blakely*, applying *Apprendi*, "clarif[ied] 'that the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.'" *Lloyd v. United States*, 407 F.3d 608, 612 (3d Cir. 2005) (emphasis omitted) (quoting *Blakely*, 542 U.S. at 303).

12

offense from a federal indictment can constitute harmless error" but reversing "without reaching the harmless-error issue"). Accordingly, *Cotton* and *Recuenco* hold little persuasive value as to whether the *Alleyne* error here was structural.[7]

The majority suggests that its opinion does not foreclose a holding that the omission of an element from an indictment in violation of *Alleyne* is structural. Instead, the majority emphasizes that left open is whether "the alternative standards more favorable to Lewis," including whether the error is structural, might apply in a case like this. But by limiting its harmless-error analysis to the record at Lewis's sentencing, I believe the majority implicitly rejects a conclusion that the error here could be structural. It is difficult to conceive of a pure sentencing error as "affect[ing] the framework within which the trial proceeds," rendering a trial "fundamentally unfair," or meeting any of the other recognized criteria for structural error. *Gonzalez-Lopez*, 548 U.S. at 148–49 & n.4 (quoting *Fulminante*, 499 U.S. at 309–10). Indeed, the majority undercuts its expressed restraint by

---

[7] Some of our sister circuits, relying on cases like *Recuenco* and *Cotton*, have decided this issue differently. *See, e.g.*, *United States v. Harakaly*, 734 F.3d 88, 94–95 (1st Cir. 2013); *United States v. Confredo*, 528 F.3d 143, 156 (2d Cir. 2008); *United States v. Salazar-Lopez*, 506 F.3d 748, 753–54 (9th Cir. 2007); *United States v. Baptiste*, 309 F.3d 274, 277–78 (5th Cir. 2002). For the reasons stated above and by the majority, neither *Recuenco* nor *Cotton* support a holding that the error here was not structural. Further, none of these cases cited *Gonzalez-Lopez* or considered its rationale.

13

acknowledging that even if the same *Alleyne* error is made in a future case—i.e., where neither the indictment, jury instructions, nor conviction reflect the crime for which a defendant is sentenced—we may nevertheless affirm the sentence imposed "where the sentencing court makes it clear that it is not sentencing the defendant based on the mandatory minimum."   In my view, doing so would ratify a fundamentally unsound principle:  that a defendant may be sentenced based on a crime for which he was never indicted nor convicted, and the evidence of which he was never afforded the opportunity to rebut.

Finally, the harmless-error analysis that the majority suggests is applicable here is inherently flawed.  As envisioned by the majority, in order to be harmless, the record must demonstrate clearly that the sentencing court would have imposed the same sentence absent the error.  *United States v. Langford*, 516 F.3d 205, 215 (3d Cir. 2008).  Put another way, errors of the kind made here would require a showing that the District Court would have imposed the same sentence even if the defendant were charged and convicted of a lesser crime than the one for which punishment was imposed.  Query whether a sentencing court's reasoning that it would impose the same sentence regardless of the crime charged violates 18 U.S.C. § 3553(a)(1)'s mandate that the sentencing court consider "the nature and circumstances of the offense" when choosing an appropriate sentence.  *See United States v. Merced*, 603 F.3d 203, 215 (3d Cir. 2010) (for a sentence to be procedurally reasonable, the district court's analysis must demonstrate "meaningful consideration of the relevant sentencing factors").  So although the majority indicates that harmless-error review is applicable, in practice

14

the kind of error here would rarely, if ever, warrant our approval even under a harmless-error analysis.

## III.

For these reasons, I would hold that a sentencing court's imposition of a sentence for an aggravated crime that was not charged in a defendant's indictment constitutes structural error. On that basis, I would vacate the District Court's judgment and remand for resentencing based on the crime of which Lewis was actually convicted.

UNITED STATES OF AMERICA v. JERMEL LEWIS, a/k/a STAR, a/k/a PR-STAR,  a/k/a P, Jermel Lewis, Appellant. No. 10-2931

FISHER, *Circuit Judge*, dissenting, with whom CHAGARES and HARDIMAN, Circuit Judges, join.

The plurality finds that Jermel Lewis's substantial rights were affected when he was sentenced to a seven-year mandatory minimum sentence for brandishing a weapon during a crime of violence, despite undisputed and overwhelming testimony that he pointed a gun at many people during a robbery. Though what occurred below was error, in my view, for the reasons explained in Judge Smith's concurring opinion, the error occurred both at trial and at

1

sentencing.[1] So, upon a review of the uncontroverted evidence presented to the grand and petit juries, I would hold that the error was harmless.

---

[1] The plurality bases its ultimate decision on the rationale introduced by an amicus curiae. This result causes me concern because it allows defendants to take the tack most expedient at any point in their appeal, regardless of what was argued earlier. Our jurisprudence dictates that we should be hesitant to consider amici's arguments that were not squarely raised by a party below, absent extraordinary circumstances involving a pure question of law, which are not present here. *N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 382-83 n.2 (3d Cir. 2012) ("'Although an *amicus* brief can be helpful in elaborating issues properly presented by the parties, it is normally not a method for injecting new issues into an appeal, at least in cases where the parties are competently represented by the parties.'"); *Webb v. City of Phila.*, 562 F.3d 256, 263-64 (3d Cir. 2009) ("We are not presented with a pure question of law here, nor are we faced with exceptional circumstances. We do not reach the merits of Webb's constitutional claims."). Moreover, an argument can be made that Lewis explicitly waived his ability to counter the Government's argument that any error was harmless. Far from neglecting to raise the issue, Lewis forcefully disavowed this argument, for instance, by beginning his argument to a three-judge panel of this Court by emphasizing "I'm arguing that harmless error doesn't apply." *See also* Lewis Br. at 15 (noting on the first page of the argument section, that "the doctrine of 'harmless error' has no application"). However, since the Government raised harmless error post-*Alleyne*, arguably the question of harmless error at sentencing was before us, so I will not couch my opposition on waiver.

I agree with the plurality that this error is not structural and therefore is reviewed for harmless error or plain error under Rule 52 of the Federal Rules of Criminal Procedure. Because the Government has conceded that Lewis objected at sentencing to his seven-year mandatory minimum sentence, we review for harmlessness.[2] Because in my view Lewis would have received the same sentence had there been no error—that is, had the grand jury been asked to charge brandishing and had that charge been presented to the jury— the error under *Alleyne v. United States*, 133 S. Ct. 2151

---

[2] I note that our review for harmless error is precipitated by a major concession by the Government—a concession that appears to have little basis in what actually occurred in the District Court. Lewis, in his first brief, adopted his co-defendant's statement that "[d]efense counsel did not object to a consecutive sentence of seven years' imprisonment for brandishing a firearm." Brief for Appellant Glorious Shavers at *5, *United States v. Shavers*, 693 F.3d 363 (3d Cir. 2012) (No. 10-2790), 2011 WL 2179274; *see* Brief for Appellant Jermel Lewis at *xi, *Lewis*, 693 F.3d 363 (No. 10-2931), 2011 WL 2322206 ("Appellant rests upon the arguments presented by co-defendant, Glorious Shavers' brief on this issue . . . ."). Years later, in a supplemental letter brief, the Government conceded that Lewis objected to the brandishing element at sentencing. It noted then that it gave Lewis the considerable benefit of the doubt in doing so. More than giving Lewis the benefit of the doubt, the Government rewrote history. Read in context, Lewis's comment at sentencing had nothing to do with objecting to the seven-year mandatory minimum. Absent that concession, we would apply plain error review to this case, and the outcome there would be obvious—Lewis would lose.

(2013), is harmless and we should affirm the District Court's sentence.

*Alleyne* held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Id.* at 2155. It followed in the footsteps of *Apprendi v. New Jersey*, which held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000). Because *Alleyne* is an extension of *Apprendi*, we have held that they are to be implemented similarly. *See, e.g.*, *United States v. Reyes*, 755 F.3d 210, 212-13 (3d Cir. 2014). If an objection to an *Alleyne* or *Apprendi* error is made, we review for harmless error.

An error is harmless when it does not affect a defendant's substantial rights. In the context of combined trial and sentencing error, that is the case when "it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Neder v. United States*, 527 U.S. 1, 15 (1999) (internal quotation marks omitted). To determine if it appears beyond a reasonable doubt that the error in Lewis's case did not contribute to the verdict obtained, we first identify the error and then evaluate what the impact would be on Lewis had the error not occurred.

In identifying the error, the key point is that when Lewis's indictment, trial, and sentencing took place, the law binding the District Court was *Harris v. United States*, 536 U.S. 545 (2002). *Harris* dictated that "[b]asing a 2-year increase in the defendant's minimum sentence on a judicial finding of brandishing does not evade the requirements of the Fifth and Sixth Amendments. . . . That factor need not be alleged in the indictment, submitted to the jury, or proved beyond a reasonable doubt." *Id.* at 568. Thus, in this case, the

4

grand jury properly did not allege brandishing in the indictment. The jury was properly not asked to find brandishing. The judge properly found the brandishing enhancement at sentencing by a preponderance of the evidence. The District Court did not err at the time. Rather, those errors only sprung into being because Lewis's case was still on direct appeal when *Alleyne* was decided, overturning the procedures dictated by *Harris*.

This understanding of the interplay between Lewis's case and the changing Supreme Court precedent helps to pinpoint the errors with regards to Lewis's indictment and trial. *Alleyne* made it improper to have a grand jury indictment omit the brandishing element and made it improper to withhold that element from the petit jury. If both of these events had taken place, then the District Court would have been correct in sentencing Lewis to the enhanced mandatory minimum. Because the error in part occurred at the indictment stage, we first review the evidence and testimony presented to the grand jury to determine whether it would have included the brandishing element in its indictment. If we determine that it would have, we then ask whether, given the evidence and testimony introduced at trial, the petit jury would have convicted Lewis of the enhanced offense. If so, we ask whether the mandatory minimum sentence imposed on Lewis would have been the same. If the answer to all three questions is "yes," the errors of which Lewis complains are harmless, for correcting them would not change Lewis's sentence—that is, would not affect his substantial rights.

This is the essence of the harmless error review and of the substantial rights inquiry in this context: Given the quality and quantum of the evidence presented at the relevant stage, would the outcome for the defendant have been different? At

5

base, this is the same inquiry faced by the Supreme Court in *United States v. Cotton*, 535 U.S. 625 (2002), albeit there in the plain error context. Plain error review and harmless error review are nearly identical, with the exceptions that plain error review (1) requires consideration of whether the error seriously affects the fairness, integrity, or public reputation of judicial proceedings and (2) shifts the burden of proof to the defendant. *See United States v. Vazquez*, 271 F.3d 93, 99-100 (3d Cir. 2001) (en banc).

In *Cotton*, a district court at sentencing made a finding of drug quantity neither alleged in the indictment nor found by the jury, consistent with practice at the time. 535 U.S. at 628. This finding was not challenged in the district court. *Id.* While the case was pending appeal, the Supreme Court decided *Apprendi*, which made the district court's quantity finding erroneous. On appeal, the Fourth Circuit reviewed for plain error and found that there was an error that seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 629. The Supreme Court reversed, holding that because "[t]he evidence that the conspiracy involved at least 50 grams of cocaine base was overwhelming and essentially uncontroverted," *id.* at 633 (internal quotation marks omitted), the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. "Surely the grand jury, having found that the conspiracy existed, would have also found that the conspiracy involved at least 50 grams of cocaine base," *id.*, as the drug quantity was referred to in other parts of the indictment.

This formulation—that the fairness and integrity of the proceeding were not affected because the outcome would not have been different—is precisely how we are to examine substantial rights: Whether the outcome would have been different for the defendant. Thus, the Supreme Court has

6

drawn a direct line between the "substantial rights" inquiry and the "fairness/integrity/public reputation" inquiry in criminal cases with these types of *Apprendi*/*Alleyne* errors. The relevant inquiry in Lewis's case is therefore indistinguishable from the underlying question the Supreme Court had to answer in *Cotton*: Was there sufficient evidence of the missing element such that the substantive outcome would have been the same?

That equivalence dictates the result here because the evidence that Lewis brandished a firearm was overwhelming and, more than being essentially uncontroverted, was in fact completely uncontroverted. Brian Anderson, a witness at trial who was a patron at the speakeasy on the night of the robbery, identified Lewis as "a heavier light-skinned guy, [who] had another type of handgun—I think it was black—in his hand." App. at 876. He stated that this person "stood in the doorway with the gun on everybody," *id.*, and positively identified Lewis at trial. Alberto Vazquez, another patron at the time of the robbery, identified Lewis at trial as "the general, the leader," who "had a black 9-millimeter or .45 caliber. . . . It was a black automatic weapon. He pulled it out of his right side pocket, of the hood pocket." App. at 968-69. Vazquez further testified that Lewis's gun was "pointed at [Vazquez] and pointed at several other people." App. at 970. At one point Lewis "pulled [Vazquez's] shirt up, [and] put the gun to [his] stomach." App. at 971. Vazquez identified Lewis as the defendant who robbed him that night.

Lewis presented no evidence to rebut the Government's showing at trial. The testimony from Anderson and Vazquez clearly demonstrated that Lewis went beyond mere "use" of a firearm and instead brandished it as per the requirements of 18 U.S.C. § 924(c)(4) (defining "brandishing" as "display[ing] all or part of the firearm, or

7

otherwise mak[ing] the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person"). This evidence was undisputed. The grand jury certainly would have found the missing element; indeed, the second count of the indictment (one of the Hobbs Act counts) explicitly charged that Lewis and his co-defendants "point[ed] firearms at the customers and employees, order[ed] them to the floor, and threaten[ed] to shoot them." App. at 70. And the petit jury heard evidence, described above, that Lewis pointed the gun at people and held it at their bodies. Lewis introduced no contrary evidence. Therefore, these errors would not have changed the outcome at trial and, according to the logic of *Cotton*, they do not affect Lewis's substantial rights.

Let there be no mistake: This is not a case where Lewis merely declined to introduce contrary testimony. Although at the time the brandishing element did not need to be found by the jury, Lewis and his counsel certainly knew that it would be considered as a sentencing enhancement by the judge after a verdict was returned. Lewis thus had every incentive to call witnesses who could provide evidence that he had not brandished a gun. He chose not to do so— presumably because there were no such witnesses who could testify on his behalf as to this fact. The fact that he at no point—at trial or at sentencing—introduced contrary evidence is fatal to his contention that the judge's brandishing finding affected his substantial rights. Therefore, the District Court's *Alleyne* error is harmless and I would affirm Lewis's sentence.

I dissent.